CITY OF NORWICH, The (PLACE v.). See Case No. 11,202.

## Case No. 2,764.

### The CITY OF PANAMA.

[5 Sawy. 63;[1] 1 San Fran. Law J. 329.]

District Court, D. California. Jan. 15, 1878.

#### COLLISION—MODERATE SPEED.

When a steamer was being navigated at the rate of at least eight miles an hour, in a dense fog, and in the usual track of vessels approaching this harbor, from ports to the northward: *Held*, that she was not going at a moderate speed, as required by section 4233, rule 21, Rev. St. U. S.

[Cited in The Pennsylvania, 12 Fed. 917.]

In admiralty.

Milton Andros, for libellant.

Delos Lake and H. P. McKoon, for claimant.

HOFFMAN, District Judge. On the night of the thirtieth of June, 1876, during a dense fog, the steamer City of Panama came in collision with the schooner Bill the Butcher. The collision occurred at some distance from the shore, but in the usual and frequented track of vessels entering this harbor from ports to the northward. No fault appears to be attributable to either vessel in respect to lights, lookouts, sounding the steam-whistle, or blowing the fog-horn. The only question is, whether the steamer was going at the "moderate speed" required by the statute.

In the very numerous cases which have arisen in this country and in England with regard to the meaning of this term it has been uniformly held that it admits of no precise definition. What under some circumstances would be a moderate speed would under others be considered excessive. Mr. Justice Lowell observes that the decisions only prove that there is scarcely any rate of speed that has not been held to be too great upon some state of facts. The Blackstone [Case No. 1,473]. The general rule seems to be that steamers, in a fog, must go at such a rate of speed as will enable them to avoid a collision by slowing, stopping, or reversing, within the distance at which, under the particular circumstances of each case, an approaching vessel can be discovered.

In the case of The Europa, 1 Pritch. Adm. Dig. 187, the privy council is reported to

have decided that if the steamer was navigated at a rate which made it impossible for her to avoid collision with a ship, "discovering it only at the distance at which alone it could be discovered, that it followed as an inevitable consequence that she was going at a rate of speed at which it was not lawful for her to navigate." "This," as Mr. Justice Lowell remarks, "makes the fact of collision the conclusive test of negligence in all cases in which the sailing vessel is in no fault," to which may be added the qualification "where some overruling necessity does not deprive the steamer of liberty of action." The diligence of counsel has collected a long list of cases in which the general rule above laid down is applied, under a great variety of circumstances, to steamers going at rates of speed, in some instances, far less than that (eight miles per hour) at which the City of Panama was navigated.[2]

The cases also disclose the inflexibility with which the courts of this country and of England reject the various and sometimes plausible excuses set up by steamers for what is in fact a violation of the law. Some of these are: That in inland navigation it is necessary to maintain, in a fog, the usual rate of speed, in order that the vessel's position may be known; that by running rapidly through a fog the vessel is sooner out of it, and thus the danger of collision is diminished; that the vessel was under contract with the government, or was carrying the mails; that in Atlantic voyages, to diminish the speed would paralyze mercantile transactions and interfere with business and trade; that a vessel is more easily and quickly checked if going at a considerable speed and with a high pressure of steam than if going at a slower rate and with low pressure of steam, and therefore that a high speed conduces to safety. To all these excuses it is answered that the law requires steamers to go in a fog at a moderate speed, and it is not for their managers to violate or for the courts to disregard the provisions of the law.

In the case at bar the steamer's rate of speed was at least eight miles an hour. A very dense fog prevailed. The schooner was not discovered until about half a minute before the collision. At the steamer's rate of speed a collision was then inevitable. The evidence shows that at a speed of eight miles

[2] The Pennsylvania [Case No. 10,947]; Id., 19 Wall. [86 U. S.] 125; The Westphalia [Case No. 17,460]; The City of Guatemala [Id. 2,-747]; The Hansa [Id. 6,037]; The D. S. Gregory [Id. 4,099]; The Franconia [Id. 5,049]; The Western Metropolis [Id. 17,441]; The Colorado [Id. 3,028]; The Magna Charta, 4 Marit. Law Cas. 153; Dolner v. The Monticello [Case No. 3,971]; The Java [Id. 7,232]; Jane v. The Great Eastern, Holt. Adm. Cas. 167, 180; The Pennsylvania, 3 Marit. Law Cas. 477; The Virgil, 2 W. Rob. Adm. 202; Macready v. Goldsmith, 18 How. [59 U. S.] 91; The Batavier, 1 Spinks, 378; The James Adger [Case No. 7,188]; The Blackstone [Id. 1,473]; Rogers v. The St. Charles, 19 How. [60 U. S.] 108; The Europa, 1 Pritch. Adm. Dig. pp. 186, 187, §§ 550, 551.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

an hour she would go about four times her length if shut off and reversed. This would be more than three times the distance between the vessels when the schooner was discovered. The steamer's course lay on the track of vessels entering the harbor from the north, and this was made known to her not only by the usual course of trade but by the fog-horns which she heard at intervals during the night. The quartermaster testifies that he heard a fog-horn about six or eight seconds before the collision. This witness, who was called by the claimant, states the speed of the steamer to have been eight or nine miles per hour, and that at the time of the collision the vessel had gone off only about a point and a half, notwithstanding that her helm was put hard a-starboard the moment the schooner was discovered. I think there can be no doubt, under these circumstances, that the steamer was going at too great a speed, or else that her lookouts were inefficient.

Decree for the libellants and reference to the commissioner to ascertain and report damages.