THE PENNSYLVANIA.

*(District Court, E. D. Pennsylvania. June 27, 1882.)*

**1. ADMIRALTY—COLLISION—FAILURE TO SHOW TORCH—PRESUMPTION OF NEGLIGENCE.**

The law requiring a sailing-vessel to exhibit a lighted torch upon the approach of a steam-ship implies that the display of such torch will aid in preventing a collision, and the failure to exhibit such torch must, therefore, be regarded as a contributory fault, in all instances, except only where it is clearly shown that owing to extraordinary facts it could have had no influence upon the result.

**2. SAME.**

The fact that the side lights of the sailing-vessel were discovered from the steam-ship as early as the torch could have been, will not relieve the sailing-vessel from the charge of negligence in failing to exhibit the torch.

**3. SAME—RATE OF SPEED OF STEAM-SHIP.**

It is negligence for a steam-ship to run at a speed of from nine to ten knots an hour in a thick fog, through which approaching vessels could not be seen at a distance of over the fourth of a mile.

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

4. SAME—GENERAL RULE.

The rule in such cases is that the steam-ship's speed should be such that she can keep off within the distance at which an approaching vessel can be seen.

5. SAME.

A steam-ship and a schooner collided in mid-ocean. The night was thick and foggy, and the steam-ship was making from nine to ten knots an hour. The schooner saw the steam-ship's head-light, but failed to exhibit a torch. The steam-ship saw the schooner's red light and reversed her engines, but could not prevent the collision. *Held*, that both vessels were in fault—the schooner in failing to exhibit a torch, and the steam-ship in running at an unjustifiable rate of speed—and that the damages should be equally divided.

Libel by the owners of the schooner S. B. Hume against the steam-ship Pennsylvania to recover damages for a loss of the schooner by collision. The facts were as follows: The collision occurred in mid-ocean, at about half past 11 o'clock on the night of July 23, 1878. The weather was thick and foggy. The vessels were bound on opposite courses, the schooner sailing with the wind free about seven knots and sounding her fog horn, and the steam-ship running under steam alone at a speed of from nine to ten knots and blowing her whistle. The master of the schooner had gone below, leaving the starboard watch on deck in charge of the second officer, with instructions that if any object was made out ahead he should "come to on a port wheel." The mast-head light alone of the steam-ship was seen from the schooner, and, in accordance with the captain's instructions, her wheel was at once put hard a-port, causing her to luff into the wind and lose her headway. No torch was shown from the schooner's deck. Those on board the steam-ship first saw the schooner's red light about two points on the starboard bow. The steam-ship's helm was at once ported, and her engines reversed at full speed, but notwithstanding this the vessels came together, the steam-ship striking the schooner two blows,—the first just abaft the main rigging on the port side, and the second a little further forward on the same side, causing her to fill and sink. It was claimed on the part of the steam-ship that at the time of the collision her headway had been entirely overcome, and that she had commenced to back, but that the heavy sea drifted the schooner against her bow, striking her twice before she could back away.

*Alfred Driver*, *J. Warren Coulston*, and *F. A. Wilcox*, for libellants.

*Henry R. Edmunds* and *Morton P. Henry*, for respondent.

BUTLER, D. J. The burden of proof is on respondent. Having run the schooner down, the presumptions are against her. She must therefore show that the fault was not hers, or answer in damages. She has undertaken to show it, by evidence that the schooner

alone was blamable,—charging the latter with fault in neglecting proper lookout, alteration of course, failure to exhibit torch, and other less important particulars. That the schooner was blamable in failing to display a torch, as required by statute, is clear. There is nothing in the circumstances shown to excuse this failure. It was her duty to have the light ready, and waiting for such an emergency as arose. She knew that in the foggy atmosphere prevailing, with the direction of the wind and condition of the sea, approaching vessels could only be discovered at short distance, and should have appreciated the importance of being prepared to display this light at any moment. It is fair to conclude that she did not hear the steamer's whistle until her lights appeared, (as the witnesses state,) but at that moment her torch should have been displayed. The argument that her failure to display it did not contribute to the disaster,—(that inasmuch as the side lights of the schooner were discovered as early as the torch could have been, and a display of the latter would not therefore have afforded the respondent additional information, or aid in keeping off, the neglect to display it was unimportant,)—cannot be accepted. The law, as expressed by the statute, implies that the display of such a light will assist approaching steamships in ascertaining the position and course of sail-vessels, and thus aid them in keeping away. The failure to display this light must therefore in all instances be regarded as a contributory fault, at least, where collision occurs under such circumstances, except only where it is clearly shown that owing to extraordinary facts it could have no influence upon the result. Here no such extraordinary facts appear. On the contrary, the circumstances—(the condition of the atmosphere and sea)—rendered the display of a torch in this instance especially important. The schooner's approach being undiscoverable in time for deliberate examination and judgment, it was essential to reasonable chance of escape that the steam-ship should have instant information of the former's exact position and course—such as the torch was calculated to afford.

Whether the schooner was guilty of fault, as charged, in changing her course is, to say the least, open to serious doubt. The vessels were meeting, I think, very nearly head on. Whether the steam-ship was a little off the schooner's port bow, or a little off the starboard, cannot be known with certainty. Neither the statements of witnesses respecting this, the manner of colliding, nor any other circumstance shown, will enable us to ascertain the fact with precision. Exactly how the schooner was heading when her witnesses saw the steam-ship

off her port bow, and when the respondent's witnesses saw her red light, is uncertain, as is also the effect upon the steam-ship's head of reversing her engine under a port helm,—all of which bear upon this question. It would not be safe, therefore, to conclude that the steamship was to starboard of the schooner when first seen, and that the latter in changing her course ran across the former's bows. It is possible such was the case. The burden of proof, however, as before observed, is on the respondent; and the fact is not proved. If it were, however, (and no excuse shown—such as impending peril,) the result would not be different. The schooner, as we have already found, was blamable in another respect, and this finding is sufficient to repel the presumption referred to, at the outset. In the absence of contributory fault proved against respondent, it would relieve her as effectually as similar findings on all the charges.

Such contributory fault is, however, proved against her. She was running at an unjustifiable rate of speed—but for which the collision, I believe, would not have occurred, notwithstanding the schooner's fault. She was making nine to ten miles an hour in a thick fog, through which approaching vessels could not be seen over the fourth of a mile. That this is excessive is, I think, clear. Coming unexpectedly upon an approaching vessel, at such a distance, and with such velocity, it would be virtually impossible to avoid disaster. The argument that she stopped before reaching the schooner, and that the latter drifted against her, and was thus injured, finds no just warrant in the evidence. Although ingeniously presented, and earnestly and ably urged, it is clearly unsound. To stop, as suggested, within the distance required was, I believe, impossible. It must be remembered that the schooner had a fair wind, and was also running rapidly. It is quite probable,—I believe clear,—that with a moderate and proper rate of speed the respondent could have kept off. The master testifies that at five or six miles an hour he could certainly have avoided the collision. If unable to see a vessel at greater distance than he saw this his speed should have been so reduced as to enable him to keep off at that distance. Any higher rate was improper. This is the true rule, having the support of sound reason and all well-considered authority: *The Panama*, 5 Sawy. 63; *The Europa*, 1 Prichard, Adm. Dig. 187; *The Blackstone*, 1 Low. 488; *The Colorado*, 1 Brown, Adm. 393; *The Monticello*, 1 Holmes, 7.

This conclusion disposes of the case. It is unnecessary to consider whether the respondent was guilty of other fault. It is clear

that each party was guilty in the respect found and stated, whether guilty in other respects or not is unimportant. The disaster must be attributed to the concurring faults already found.

The libellant will therefore receive a decree for half damages.

The answers of the assessors fully sustain the views expressed, and will be filed herewith.

The court submitted to nautical experts called as assessors certain questions, which, with the answers thereto, were as follows:

(1) Under the circumstances stated by the steam-ship's officers,—the condition of the atmosphere and sea,—was a speed of ten or even nine miles an hour excessive, for the Pennsylvania?

*Answer.* The steamer's course was W. by N., the wind was S. W., strong, with a heavy head sea, which, for the safety of the men, occasioned the stationing of the lookout at the bridge instead of on the forecastle. The night was dark, and the atmosphere so thick as to require the constant use of the steam-whistle. The steamer was under full-speed bells, making between nine and ten miles per hour when the red light of the schooner S. B. Hume was first seen, about one point on the starboard bow, and about four lengths of the ship distant. Under these circumstances, as stated by the officers of the steamer, the speed of nine or ten miles per hour was excessive, and should have been prudently reduced to a point combining control with safety, which would be half her maximum speed regulated by the bells governing the engine, or about six knots per hour.

(2) Might the display of a torch by the schooner when the steam-ship first came into view have aided to keep her off?

*Answer.* The schooner's course was E. S. E., single-reefed mainsail, the conditions of the weather as above stated. Had a torch-light been displayed when the mast-head light of the steamer was first sighted, the officers of the latter would have seen the glare of its flash before the red light came into view, and in time to determine the direction of the schooner, thereby aiding the officers of the steamer in averting the collision, either by reversing the engine or by altering her course.