## THE HERCULES.

PHILADELPHIA & READING R. Co. *v.* WARREN FOUNDRY & MACHINE Co.

SAME *v.* PERKINS and others.

*(Circuit Court, D. Massachusetts.   August 14, 1883.*

COLLISION—STEAMER—SCHOONER—TORCH—DAMAGES DIVIDED.
    The evidence in this case *held* to sustain the judgment of the district court
    as to the fault of the steamer in not avoiding the schooner with which she col-
    lided, but that the failure of the schooner to exhibit a torch, as required by Rev.
    St. § 4234, " on the approach of a steam-vessel during the night-time," ren-
    dered her also in fault, and that the damages should be divided between the
    two vessels.

In Admiralty.

*Morse & Stone,* for claimants.

*John C. Dodge & Sons,* for Warren Foundry & Machine Company.

*John Lathrop* and *John C. Dodge,* for Perkins and others.

LOWELL, J.   I agree with the district court that the steamer's peo-
ple have not sustained the burden which rests upon them of proving
a change of course on the part of the schooner.   It is not easy to
understand how they could have mistaken a green light for a red one;
but it is still more difficult to believe in so sudden and complete a
change by the schooner as would account for the collision.   The
"stereotyped excuse," as it has come to be called, from an energetic
remark of GRIER, J., in *Haney* v. *Baltimore Steam Packet Co.* 23 How.
291, "always improbable, and generally false," that the sailing vessel
changed her course, always seems probable to the persons on board
the steam-ship; for, assuming as they do, that they have made no
mistake in courses and distances, the necessary inference is that the
other vessel has failed in the simple duty of keeping her course.   My
own observation has taught me that a great many of these accidents
happen from a failure to see the approaching vessel, which may be
due to a defect in her lights, or to a want of vigilance.   In this case,
there is no complaint of the side lights, and the vessels were approach-
ing each other at the rate of about a mile in four minutes; and, if
the schooner's lights had been seen from the first moment that they
were visible, the time would have been short; and one possible ex-
planation of the mistake is that the ships were so near each other
when the light was seen that there was hurry and excitement on
board the steamer.   It is not necessary, however, to decide more than
that the night was clear, the schooner had the side lights, and should
have been avoided by the steamer.

    Upon the other part of the case, I fail to agree with the district
judge.   The schooner showed no torch, as the statute orders every
sailing vessel to do "on the approach of a steam-vessel during the
night-time."   Rev. St. § 4234.   Our sailing rules have not the strict

and arbitrary character which the highest court in England attributes to the act of parliament, making a departure from any rule conclusive evidence of fault, though no damage has resulted from it. *Stoomvaart Maatschappy Nederland* v. *Peninsular & Oriental Steam Nav. Co.* 5 App. Cas. 876. We admit the usual exception of the admiralty law, that a fault which has had no ill consequence is immaterial. *The Leopard*, 2 Low. 238; *The John H. Starin*, 2 Fed. Rep. 100; *The C. Whiting*, 3 Fed. Rep. 870; *The Oder*, 8 Fed. Rep. 172. Still great caution must be used in applying this exception.

Congress has refused to relieve steam-ships of the burden of avoiding sailing-ships, however difficult it may be for large steamers to be handled readily, and however easy for some light sailing craft; but they have imposed upon the latter the duty of giving notice of their presence by certain definite means. We are bound, therefore, to believe that the exhibition of a torch is useful under ordinary circumstances. Experts may, perhaps, be found to testify that a moderate speed is harmful, a fog-horn useless, and a torch actually misleading; but the statute must be obeyed. Accordingly, it is held in recent cases that a sailing vessel neglecting this precaution must satisfy the court, beyond a reasonable doubt, that no injury can have resulted from the omission. See *The Eleanora*, 17 Blatchf. 88, in which the chief justice says (p. 102,) "Nothing short of an absolute certainty that it would do no good, to be established by proof on the trial, will justify an omission to obey the rule;" and *The Sarmatian*, 2 Fed. Rep. 911; *The Narragansett*, 3 Fed. Rep. 251; S. C. 11 Fed. Rep. 918; *The Samuel H. Crawford*, 6 Fed. Rep. 906; *The Alabama*, 10 Fed. Rep. 394; *The Roman*, 12 Fed. Rep. 219; S. C. 14 Fed. Rep. 61; *The Pennsylvania*, 12 Fed. Rep. 914; *The Johns Hopkins*, 13 Fed. Rep. 185.

Whether all the earlier cases were rightly decided on their facts, is of no great consequence at present. The principle is clear, and must be adhered to. In this case, by holding the witnesses of the steamer to the exact accuracy of their statements, we might say that they had seen the schooner's light so early that a torch would not have added anything to their knowledge; but there is always a strong temptation for the steamer's witnesses to exaggerate the distance at which the sailing vessel was seen, in order to show their vigilance; and it would not be just to hold them responsible for neglecting or failing to see the schooner, and at the same time to hold that they did see it so soon that a torch would not have enlightened them.

In this case there is no evidence upon either side on this point, except that no torch was shown. It does not appear whether there was a torch on board the schooner. One rather significant circumstance is that the mate, who was the lookout, saw the danger in time to blow a fog-horn; why he did not then, or a little sooner, show a torch, he has not explained. I must therefore vary the decree so far as to divide the damages, and it is so ordered.