## HOOD v. THE LEHIGH.

*(Circuit Court, N. D. Illinois. October 6, 1890.)*

1. COLLISIONS IN FOGS—SPEED OF VESSELS.
   Respondent, a propeller laden with grain, while running in a fog at night at the rate of about nine miles an hour, nearly her full speed, collided with and sunk libelant, a coal-laden schooner, whose speed was four or five miles an hour. The regulation lights on respondent were burning brightly, the lookouts properly stationed, the captain and mate on watch, and her fog-whistle was being sounded once a minute. *Held*, that respondent was at fault in maintaining a dangerous and unreasonable rate of speed in the fog.

2. SAME—TORCHES—CONTRIBUTORY NEGLIGENCE.
   Libelant, the schooner, failed to show a torch on first hearing respondent's fog-whistle, and made no attempt to do so, as required by Rev. St. U. S. § 4234, in such cases, and it was in evidence that a torch could have been seen further than the schooner's lights, and that the display of a torch would probably have kept the vessels apart. *Held*, that libelant was guilty of contributory negligence in not displaying a torch and that the damages should be divided.

In Admiralty. Appeal from district court.

*W. H. Condon* and *T. H. Hood*, for libelants.

*Schuyler & Kremer*, for respondent.

GRESHAM, J. The propeller Lehigh ran into and sunk the schooner Van Valkenburgh in Lake Huron, off Thunder Bay island, between 12 and 1 o'clock on the night of May 31, 1887. The schooner was on a voyage from Ashtabula to Manitowoc, laden with coal. Her course was N. N. W., and her speed was four or five miles an hour. The propeller was on a voyage from Chicago to Buffalo, and at the time of the col-

lision was running nine or ten miles an hour, which, with a cargo of grain, was little, if any, less than her full speed.   Both vessels had been running in fog for some time before the collision, and when the lights of each were sighted from the other they were only 400 or 500 feet apart, and the schooner was apparently emerging from a dense bank of fog.

The schooner's lookout testified that for two or three hours he had been on the top-gallant forecastle, blowing a fog-horn at intervals of a minute; that, although he had been vigilant in watching for vessels, the first knowledge he had of the approach of the propeller was the sound of her steam-whistle over the schooner's lee bow, forward of the cat-head; that he immediately reported a steam-boat to leeward, and the captain and mate-on deck replied that they heard the whistle; that he heard the propeller whistle four or five times before the collision; that when she was about 400 feet away he saw her starboard light come out of the fog, then her mast-head light, and then her port-light, and that after sighting her she blew one or two whistles.

The schooner's mate testified that he and the captain were on watch when the collision occurred; that for two hours the lookout had steadily blown the fog-horn at intervals of about one minute; that he reported a steamer blowing her whistle on the lee bow, and he (the mate) replied "All right; keep your horn blowing regularly;" that he was then between the fore main rigging and the cabin, and the captain was aft, walking; that when he heard the steamer's second blast he ordered the lookout to blow his horn a little oftener, which he did; that the fog was so thick he could not see more than 200 or 300 feet, at which distance he first saw the propeller's three lights at that same time, and she was then bearing straight for the schooner's fore-rigging, on the port side, where she struck, cutting into the schooner eight or ten feet, and sinking her in two or three minutes; and that he heard the propeller's whistle about ten minutes before he saw her lights.

The schooner's captain testified that for half an hour before the collision he was forward of the cabin on the port side; that when the vessels came together the fog was dense, and had been all night; that he did not hear the first whistle reported by the lookout, but heard a whistle directly, or within a minute or two later, when he rapidly walked forward to the main rigging, and saw the propeller's three lights not over 300 feet distant; that he immediately ordered the lookout to blow his horn constantly, and the wheelsman to port his wheel; that these orders were obeyed, and the schooner came up about two points; that it was not more than a minute and a half after he heard the first whistle until the collision; that the propeller was first heading for the schooner's midships, but struck her forward of the forecastle; that before the collision he heard the signals on the propeller to back; that he had a torch forward by the side of the cabin, and by his side, but he had no time to light and show it after he heard the propeller's whistle, her speed being such that collision was then inevitable; that he heard the propeller's whistle about a minute after the lookout's first report, and saw her lights about half a minute after hearing her whistle.

Several other witnesses testified on behalf of the libelants that the night was foggy, and that when the propeller was first sighted the vessels were about 400 feet apart. The schooner's captain was the only witness who was examined by the libelants on the subject of the torch.

The propeller's engineer testified that when the collision occurred the engine was backing strong, and the wheels had made about 120 or 130 backward revolutions; that she could be stopped when running at her usual speed (ten miles an hour) in about two minutes, and he thought she had been backing three minutes; that he could see stars overhead, but there was a fog-bank on the land side; that her fog-whistle had been sounded all night at intervals of a minute; and that when he received the order to back he was writing up his log, and his assistant was ten feet below oiling the engine.

The propeller's second mate testified that when the collision occurred he was on watch at the mast-head, and the captain was on the bridge, and they first saw the schooner's red light apparently flash up out of a fog-bank over the propeller's starboard bow, about 500 feet away; that the captain immediately gave the order "Hard a-port," which was promptly obeyed; that the propeller was backing at the time of the collision; that he heard Thunder Bay whistle several miles distant just before the collision, and saw Thunder Bay light just afterwards; that he heard no signal from the schooner; that a torch could have been seen three times as far as a red light, and he had no doubt the collision would have been avoided if the schooner had shown a torch; that the propeller's speed was nine miles an hour when she struck the schooner; that the fog was not dense; that the propeller had been running in fog all night; and that he saw a fog-bank from which the schooner apparently suddenly emerged when he observed her light.

One of the propeller's watchmen testified that for some time before the collision he had been on duty on the starboard bow; that the fog seemed to be in banks; that at times he could see under it, and again he could not; that he saw the schooner's bright red light immediately after the second mate reported it; that he heard no fog-signal from the schooner; that if she had shown a torch it could have been seen far enough to avoid her; that for some time previous to the collision the propeller's fog-whistle had been sounded every minute, and that the vessels came together about two minutes after the schooner's red light was observed.

The propeller's other watchman testified that about the time of the collision he heard Thunder Bay whistle, three miles off, and just afterwards he saw Thunder Bay light; that he heard no fog-signal from the schooner, and that it was less foggy immediately after the collision.

The propeller's wheelsman testified that he was on duty at the time of the accident, and he first saw the schooner's red light when the vessels were 500 or 600 feet apart; that the captain at the same time ordered the wheel hard a-port, and directed the engine to stop and back, both of which orders were obeyed; that, before striking, the propeller swung about two points and a half on the port wheel and the engine was backing;

that she had been blowing her big fog-whistle, which could be heard several miles, for some time before; that he heard no fog-horn from the schooner; that he heard Thunder Bay whistle just before the collision, and a minute or less afterwards saw Thunder Bay light; that the schooner was not seen sooner because she was in a fog-bank; that if she had shown a torch she could have been avoided; that when the schooner was sighted the propeller's speed was about nine miles an hour; that the vessels were 200 feet apart when he got the wheel over; and that if he had rung to back at first he could have stopped the propeller, but he did not do so because he thought he could pass the schooner.

The propeller's captain testified that before and after the collision he could see stars overhead, but it was hazy, and a fog-bank was hanging along the shore; that he and the second mate saw the schooner's red light suddenly, and at the same time, about three points off his starboard bow, and 400 or 600 feet away; that he immediately ordered helm a-port, thinking he could pass under her stern, and rang the bells to back, which orders were obeyed; that he could have seen a torch on the schooner a mile or more, and if she had shown one he could have cleared her; that he had been blowing his fog-horn previously every minute; that he heard no fog-whistle from the schooner, and did not believe one was blown; that her light sprang up all at once; that the propeller was making nine or nine and a half miles an hour when the schooner was sighted; and that after the collision he asked the captain of the schooner why he did not show a torch, and he replied he might have done so, but did not, although he had one near by, and that he blew his fog-horn, but it was not a good one, and could not be heard any distance. The schooner's captain, however, testified in rebuttal that he did not make these statements.

The district judge found that the schooner was not in fault, and condemned the propeller for the entire damages. The propeller's regulation lights were burning brightly; two lookouts were properly stationed, the captain and second mate were on watch, and her fog-whistle had sounded once a minute before the schooner was sighted; but she was running in fog, and, however careful those who were navigating her may have been, they knew her speed was unreasonable and dangerous. If she had been running under check, as she should have been, the collision would not have occurred. I agree with the district judge that the propeller was at fault.

But more important questions remain for determination. Was the schooner at fault in not showing a torch-light before the propeller's lights were seen? If she was, did her negligence contribute to the disaster? The schooner's lookout thought he heard the propeller's whistle four or five times before the collision, and that one or two of the blasts were after he saw her lights emerge from the fog. Assuming that he was right in this statement, he heard the propeller whistle several times before he saw her lights, and all the witnesses for the respondent agreed that her fog-signals were sounded at regular intervals of a minute. The lookout promptly reported to the mate on deck a steam-boat whistling over the

schooner's forward lee-bow, and the latter testified that when he heard the propeller's second signal he ordered the lookout to blow his horn a little oftener, and that he heard the propeller whistle 10 minutes before he saw her. It is insisted, however, that in this latter statement the schooner's mate was mistaken; that it could not have been 10 minutes from the time he heard the propeller's first whistle until he saw her. But even if the mate was mistaken, as claimed, and he probably was, it is plain from his evidence that at least two of the propeller's steam-signals were heard before she was sighted from the schooner. It is significant in this connection that just before the collision Thunder Bay whistle, a mile or more distant, was heard from the deck of the propeller, and yet her steam-signals were not heard from the deck of the schooner until the vessels were within 400 or 500 feet of each other. The captain of the schooner did not hear the first whistle reported by the lookout, but he heard the propeller whistle "directly, or within a minute or two later." If, when the lookout first reported the approach of a steam-boat, the captain or mate of the schooner had promptly lighted and shown a torch, it might have been seen before the schooner's lights were observed, and notice thus given might have avoided the collision. The captain and mate on the schooner's deck were fairly notified of the approach of a steam-vessel in the fog, and section 4234 of the Revised Statutes made it their duty to promptly show a torch, which they did not do; and it cannot be said from the evidence that this neglect of a statutory duty did not in some degree contribute to the accident. The schooner's captain was the only witness who testified for the libelants on the subject of the torch. In his opinion, a collision was inevitable when he sighted the propeller, and the display of a torch then would have done no good; but he did not say it was too late to have shown a torch when the lookout reported the propeller's first signal. A number of the officers and crew of the propeller testified that in their opinion a torch could have been seen further in the fog than the schooner's lights, and that the display of a torch would have kept the vessels apart. The statute which the schooner violated was enacted to prevent just such accidents as the one that occurred, and the burden was upon the libelants to show by clear proof that the schooner's negligence did not, and could not, have contributed to the damage which she sustained. The testimony of the captain was not sufficient to relieve the schooner of that burden. The evidence does not show that, if the schooner had displayed a torch when her lookout first reported the propeller, it would not have been seen from the deck of the latter before the schooner's lights were observed; and it cannot be said that if a torch had been shown, the propeller could not and would not have taken proper precautions to keep out of the schooner's way. It was incumbent upon the libelants to show by clear and convincing proof that the situation justified the schooner in her failure to promptly show a torch. If the captain had a torch on the deck near by, and ready for use, it is certainly singular that he did not show it. *The Eleanora,* 17 Blatchf. 88; *The Pennsylvania,* 19 Wall. 125; *The Hercules,*

17 Fed. Rep. 606; *The Johns Hopkins*, 13 Fed. Rep. 185; *The Pennsylvania*, 12 Fed. Rep. 914.

I think the damages should have been divided between the two vessels, and the decree of the district court will be modified to that extent.