## THE COLUMBIAN.

(District Court, D. Massachusetts. February 9, 1899.)

### No. 956.

1. COLLISION—EXCESSIVE SPEED IN FOG.

Nine or ten knots at any time or place is excessive speed for a vessel in a fog, and the custom of ocean steamers to make such speed or greater will not relieve one of them from legal liability, under the inter· national rules, for a collision occurring under such circumstances.[1]

2. SAME—NEGLIGENCE OF SCHOONER—INSUFFICIENT PRECAUTIONS IN FOG.

A collision occurred about midnight, in a fog, between the ocean steamer Columbian and the schooner Doughty, which was on the banks for fish. The steamer was making an excessive speed, and the schooner was neither at anchor nor quite under way nor under control, but was making about two knots an hour. There was no man at the wheel, but her helm was lashed. Only two men were on deck. She had no torch nor flare-up ready for use, and was otherwise insufficiently lighted, and her fog horn was not regularly sounded. *Held*, that the schooner as well as the steamer was in fault.

This is a libel for collision by Horace M. Sargent and others against the steamship Columbian.

Benjamin Thompson, for libelants.

Lewis S. Dabney and Frederic Cunningham, for claimant.

LOWELL, District Judge. This is a libel for damage caused by a collision between the large ocean-going steamer Columbian and the schooner Doughty. The Columbian was bound from London to Boston. The schooner was on a voyage to the banks for sword fish. The collision occurred on the La Have banks, shortly before midnight, on August 30, 1898. There was a fog, which had set in about 11 o'clock. From the evidence, I find that the Columbian was headed W. by N.. and was proceeding at from nine to ten knots an hour, when she heard the fog horn of the Doughty about a point on her port bow. The steamer's engines were thereupon stopped. A minute later, or thereabouts, the officers and those on the lookout saw almost under the steamer's port bow the white light of the schooner, and heard her fog horn a second time. The order was immediately given to put the engines full speed astern, and the helm hard a-port. This was done, but neither the steamer's speed nor its course was seriously affected thereby before the collision. The bluff of the Columbian's port bow struck the starboard anchor of the Doughty, doing trifling damage; but a projecting part, probably the crown, of the steamer's port anchor, caught the jibstay of the schooner, and tore out everything forward, bringing down the fore-topmast, and breaking off the mainmast, about 12 feet from the deck. The steamer forged by, and lost sight and hearing of the schooner. With commendable care, Capt. Masters of the Columbian lay to, sent out a boat, and, after about two hours of searching, heard a gun fired from the schooner; soon after-

---

[1] As to speed of vessels in fog, see note to The Niagara, 28 C. C. A. 532, and note to The Mount Hope, 29 C. C. A. 368.

wards he took her in tow, and brought her to Boston. The schooner was neither quite hove to nor quite under way, making about two knots an hour, with her jibs hauled aweather, her foresail close-hauled, and her mainsail held by its boom tackle pretty well out to leeward. Her helm was lashed hard alee. The wind was about W. S. W. or W. by S.; the schooner's course about N. W.; but varying considerably as she paid off to leeward when the wind filled her jibs, and came up into the wind when it filled her mainsail. There were two men on deck, one forward and one aft. The steamer's fog horn was heard on her starboard quarter a minute or so before the collision. Besides sounding her fog horn, nothing was done aboard the schooner until after she was struck.

The only fault alleged against the steamer is excessive speed, and the authorities make it clear that nine or ten knots an hour at any time or place is excessive speed in a fog. In saying this, I have no doubt that the captain of another steamer like the Columbian would have gone ahead quite as fast as Capt. Masters did in this case. Had the steamer been an ocean liner, instead of a freight steamer, it would probably have been sent through the same fog at from 15 to 20 knots an hour, and its captain would have been blamed by his company as well as by his passengers if he had loitered at half speed. Though this almost universal practice may relieve the captain of a steamer from moral blame, Capt. Masters was none the less a transgressor of the international rules, and I am bound to find the steamer at fault. "I have often had occasion to say that the owners and masters of steamboats must either comply with the statute or procure its repeal." The Cambridge, 2 Low. 21, 23, Fed. Cas. No. 2,334. "Experts may perhaps be found to testify that a moderate speed is harmful, a fog horn useless, and a torch actually misleading, but the statute must be obeyed." The Hercules, 17 Fed. 606, 607.

That the schooner was also in fault I have little doubt. Indeed, I rather think she was blameworthy, under the circumstances, in not having a man at the wheel, though the law on this point is not definitely settled. See Mars. Mar. Coll. (4th Ed.) 454, and cases cited; The Pennsylvania, 19 Wall. 125; The Pennsylvania, 23 Law T. (N. S.) 55; The Ada A. Kennedy, 33 Fed. 623. In any case, when the steamer's whistle was heard, I think the wheel should have been taken out of the becket at once. Had the schooner been under control, a very slight change of her course, made even at the last moment, might very probably have avoided the collision. It is urged by the libelants' counsel that the failure to make this change in extremity is not to be imputed to the schooner as a fault; but the doctrine of extremity has no application here. The schooner is held to be at fault, not for a failure to change her course at the last moment, but for a deliberate surrender of control over her movements, made when in no extremity whatsoever. If it ever be proper for a schooner thus to tumble about in a fog, neither at anchor nor under control, then certainly, in order to exempt herself from blame, the schooner must take every precaution; and here every precaution was not taken. The Doughty had no torch or flare-up light ready for immediate use, and her white

stern light, if she had any, was not that which the rules call for. Having heard all her witnesses, I gather from their testimony that her fog horn had not been sounded regularly during the half hour preceding the collision. The two signals heard by the steamer, I think, were single blasts, or, if double, were given so hastily and clumsily as to seem single at a very short distance. It was the sound of the steamer's whistle which aroused the two men on the schooner's deck to the necessity of blowing her horn; and, in their confusion, I doubt if they knew whether the blasts given were single or double. Her whole management was distinctly careless. See The Eleanora, 17 Blatchf. 88, Fed. Cas. No. 4,335. Under these circumstances, she also was in fault. Decree for the libelants for half the damage sustained.