## THE COLUMBIA.

### (District Court, N. D. California. August 27, 1900.)

#### No. 11,501.

1. COLLISION—STEAM AND SAIL VESSELS CROSSING—SPEED IN FOG.

A steamer, which was in the track of coastwise vessels, going at a speed of 13 knots an hour, at which speed she could not be stopped in a less distance than 1,400 feet, in a fog so dense that another vessel could not be seen at a distance of more than one-eighth of a mile, was not going at a moderate speed, within article 16 of the act of August 19, 1890 (26

Stat. 326), which took effect on July 1, 1897 (29 Stat. 893), which provides that "every vessel shall, in a fog, mist, falling snow or heavy rain storm, go at a moderate speed, having careful regard to the existing circumstances and conditions," and must be held in fault for a collision with a schooner which was entitled to the right of way.

2. SAME—EVIDENCE OF SOUNDING OF FOG SIGNALS.

The distance at which a fog horn can be heard varies so greatly with the direction and the particular conditions of the fog and atmosphere that the fact that the fog signals of a schooner were not heard by an approaching steamer until two or three minutes before collision, while the whistle of the steamer was heard on board the schooner for half an hour previously, is entitled to little weight in determining whether the horn was sounded at the intervals required by article 15 of the act of August 19, 1890 (26 Stat. 325), which took effect on July 1, 1897 (29 Stat. 893).

3. SAME—LOOKOUT.

Where the lookout on a small schooner saw an approaching steamer as soon as she could be seen through the intervening fog, the fact that he was stationed on the after house, instead of at the bow, cannot be held a fault contributing to a collision between the two vessels, nor can the fact that men were not stationed ready to make a change in the sails in case of emergency, where a change of course could not have been made in time to avoid collision after the approaching steamer was seen.

4. SAME—IMPROPER MANEUVERS—TACKING IN FOG.

A schooner cannot be held in fault for a collision with a steamer in a fog, the primary cause of which was the excessive speed of the steamer, because half an hour before the collision, and after hearing the whistle of the steamer, she tacked on a course which might bring her across that of the steamer, especially where the tack she was on previously had brought her as near the shore as it was prudent to go.

In Admiralty.  Suit for collision.

Andros & Frank, for libelants.
Geo. W. Towle, Jr., for claimant.

DE HAVEN, District Judge.  This is an action brought by the owners, master, and crew of the schooner J. Eppinger to recover damages on account of a collision between that vessel and the steamer Columbia.  The collision occurred between 4 and 5 o'clock on the afternoon of July 2, 1898, at a point in the Pacific Ocean about 68 miles north of San Francisco and 7 miles off shore.  At the time of the collision there was a light northwesterly breeze, and the Eppinger with all her sails set except her fisherman's staysail, and main topsail, was on the offshore tack, going in a direction W. by S. or W. S. W., and making from three to four knots an hour.  She had been standing inshore on the port tack, and, having gone as near to the shore as, in the judgment of her master, was safe, she was put upon the offshore or starboard tack about half an hour before the collision.  A dense fog was prevailing at the time of the collision, so dense that a vessel could not be seen for a greater distance than one-eighth of a mile. The Columbia was going at her usual speed, 13 knots an hour, and her course was N. W. ⅓ N.  When the schooner was sighted, the engines of the Columbia were immediately reversed, but the vessels were then so near each other that there was not sufficient time to entirely check the steamer's headway before they were in collision, and the Eppinger was struck with such force that her port side, just abaft the fore rigging, was cut entirely through, the bow of the steamer penetrating

the side and deck planking a distance of six feet. The schooner was a vessel of about 89 feet in length and 107 tons register.

1. It is alleged in the libel that the collision was caused by the fault of the Columbia in running "at a dangerously high rate of speed in the dense fog then prevailing," and whether the collision is to be attributed to this alleged cause is the principal question for decision. Article 16 of the act of August 19, 1890 (26 Stat. 326), which took effect on July 1, 1897 (29 Stat. 893), provides:

"Every vessel shall, in a fog, mist, falling snow or heavy rain storms, go at a moderate speed, having careful regard to the existing circumstances and conditions."

Article 20 of the same act provides:

"When a steam vessel and a sailing vessel are proceeding in such directions as to involve risk of collision, the steam vessel shall keep out of the way of the sailing vessel."

The collision, as above stated, occurred in a fog so dense that a vessel could not be seen for a greater distance than one-eighth of a mile. The speed of the steamer at the time was 13 knots an hour. The evidence shows that when under such headway the Columbia cannot be stopped in a less distance than 1,400 feet. The place where the collision occurred was in the track of coastwise vessels, and where, therefore, it was reasonable to expect that one or more of such vessels might be found. I think it must be held, under all of the authorities, that the speed under which the Columbia was proceeding was not the moderate speed required by the statute. What constitutes moderate speed in a fog will, of course, vary with the special circumstances of the case,—such as the density of the fog, and the place where the vessel is navigating,—a higher rate of speed being permissible when the fog is light than when very thick, and in mid-ocean, where there is less probability of meeting other vessels, than at the entrance of a frequented harbor, or in the track of coastwise vessels. I am unable to give my assent to the proposition contended for by the proctor for claimant that the Columbia had the right to continue her speed of 13 miles an hour in the dense fog upon the assumption that no vessel was near, until the very moment when the fog horn of the Eppinger was first heard. Undoubtedly, the purpose of the statute in requiring a fog horn or whistle to be sounded is that other vessels may, if possible, be warned of the presence of the vessel giving such signal, but, in addition to giving a sound signal, the statute imposes upon every vessel, when navigating in a fog, the imperative duty of proceeding at a moderate rate of speed, and the failure to observe this requirement is a fault. The City of New York (D. C.) 15 Fed. 624. The following cases may be cited in support of the conclusion that the Columbia's speed was excessive: The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148; The Nacoochee, 137 U. S. 330, 11 Sup. Ct. 122, 34 L. Ed. 687; The Utopia (D. C.) 1 Fed. 892; The Marathon v. The Andrew Hicks (D. C.) 24 Fed. 653; The Pennsylvania (D. C.) 12 Fed. 914; Hood v. The Lehigh (C. C.) 43 Fed. 597; The Bolivia, 49 Fed. 169, 1 C. C. A. 221; The Columbian (D. C.) 91 Fed. 801; The Patria (D. C.) 92 Fed. 411. In the case last cited the court held that seven knots an hour was not a "moderate speed" for a steamer when

navigating "in a fog so thick that a vessel can be seen only a few hundred feet distant." In the case of The Bolivia, above cited, it was said:

"The rule is firmly established in this country, and also in England, that the speed of a steamship is not moderate—at least in localities where there is a likelihood of meeting other vessels—if it is such that she cannot reverse her engines and be brought to a standstill, within the distance at which, in the condition of the fog, she can discover another vessel."

This general rule is the same as that which was approved by the supreme court in the case of The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148. In the case of The Columbian (D. C.) 91 Fed. 801, the court held that nine knots was excessive speed for a steamer in a thick fog, saying:

"The only fault alleged against the steamer is excessive speed, and the authorities make it clear that nine or ten knots an hour at any time or place is excessive speed in a fog. In saying this, I have no doubt that the captain of another steamer like the Columbian would have gone ahead quite as fast as Capt. Masters did in this case. Had the steamer been an ocean liner, instead of a freight steamer, it would probably have been sent through the same fog at from 15 to 20 knots an hour, and its captain would have been blamed by his company, as well as by his passengers, if he had loitered at half speed. Though this almost universal practice may relieve the captain of a steamer from moral blame, Capt. Masters was none the less a transgressor of the international rules, and I am bound to find the steamer at fault. 'I have often had occasion to say that the owners and masters of steamboats must either comply with the statute or procure its repeal.' "

2. Was the collision caused in any degree by fault upon the part of the Eppinger? The Eppinger was provided with an "efficient fog horn, sounded by mechanical means," and that for a half hour before the collision it was sounded from time to time is abundantly shown by the evidence, and in fact is not disputed by the claimant; but the claim is made that the fog horn was not sounded "at intervals of not more than one minute," as required by subdivision "c" of article 15 of the act of August 19, 1890 (26 Stat. 325). The argument in support of this contention is that the horn carried by the Eppinger could have been heard a distance of about two miles, and that it was not heard on the steamer until two or three minutes before the collision, whereas, if regularly sounded, it would have been heard five or six minutes earlier. In addition to this, one of the seamen on the Eppinger testified that her horn was sounded "every minute or second minute," and another that it was blown "about every three or four minutes," and still another that it was blown "almost every minute." On the other hand, the master of the Eppinger testified explicitly that the fog horn was sounded "every minute; not to exceed one minute"; and the mate said "it was sounded constantly." The master of the Eppinger is an interested party, but he impressed me as an intelligent and truthful witness, and his evidence upon this point is corroborated in some degree by the master of the Columbia, who testified that he first heard the Eppinger's horn about two minutes before she came in sight, and that during those two minutes he heard three blasts, which would show that during that time, at least, her horn was sounded at proper intervals; and in view of the undisputed fact that the Columbia's whistle had

been heard by the Eppinger for at least half an hour before the collision it is reasonable to suppose that during all that time her fog horn was sounded with the same frequency, for the purpose of giving notice of her presence to the approaching steamer. The fact that the fog horn was not heard upon the steamer until two or three minutes before the collision is entitled to but little weight in the consideration of this question, as it is well known that the distance a sound signal can be heard varies with the changing conditions of the atmosphere, and a horn or whistle may at one time be heard a distance of two miles, and at another time not so far. The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148. And in the case of The Patria (D. C.) 92 Fed. 411, it was said:

"That neither vessel should hear the fog signals of the other until they were near each other is not uncommon in fogs of variable density. See The Niagara (D. C.) 77 Fed. 330, affirmed in 28 C. C. A. 528, 84 Fed. 902; The Lepanto (D. C.) 21 Fed. 656, 657."

And in the same case the fact was noticed that the distance a fog horn can be heard by another vessel is affected by the relative position of such vessel to the one upon which the horn is sounded, and the court, in referring to this, said:

"The schooner's fog horn would naturally be heard later than the steamer's whistles, both because it was not so powerful as the steam whistle and also because the blasts of a fog horn, unlike those of a steam whistle, are more specially operative along a particular axis, which much diminishes their penetration outside of the limited arc towards which the horn happens to be directed."

It is further insisted upon the part of the claimant that the Eppinger was in fault—First, in not having her lookout forward, instead of upon the top of the after house; second, in not having a man ready to slacken the head sails of the schooner when the steamer came in sight; and, third, in tacking offshore after the Columbia's whistle was heard. I think it is clear from the evidence that a lookout stationed on the after house of the schooner could see the Columbia from the direction in which she was approaching as quickly as if his station had been forward, and it also satisfactorily appears from all of the evidence that the Columbia was in fact discovered by the Eppinger as soon as she approached near enough to her to be seen through the fog. This being so, even though it should be conceded that on a small schooner like the Eppinger the proper place for a lookout is forward, the failure to have her lookout so stationed did not contribute in any degree to the collision. I am not prepared to say that the master of the Eppinger failed to exercise ordinary care in not having a seaman in position to let go the head sails quickly in case of an emergency requiring the schooner to immediately change her course; and, besides, the time intervening between sighting the steamer and the collision was so short that the collision could not have been avoided by any such maneuver. Nor can any fault be attributed to the Eppinger in tacking offshore when she did. Her master had reasonable cause to believe that to proceed further on the inshore tack would endanger the safety of his vessel. He was as near the shore as it was prudent for him to go in a dense fog and only a light breeze blowing, which, upon coming nearer shore,

might die out, and leave his vessel without steerageway. The fact that he had before heard the whistle of the Columbia to the south did not make it improper for him to tack offshore, or require him to lie to or cast anchor until his vessel could proceed on the offshore tack, without crossing the steamer's course. He did not know, and he was not required to anticipate, that the Columbia was not proceeding under such moderate speed that she would be able to avoid coming in collision if the courses upon which the vessels were proceeding should bring them in sight of each other.

After careful consideration of all the evidence, my conclusion is that the collision was caused solely by the fault of the Columbia in not going, in the fog then prevailing, at a moderate rate of speed, as required by law. The libelants are entitled to a decree for damages, and the case will be referred to United States Commissioner Morse to ascertain and report the damages sustained by libelants.