THE HELENA v. THE LORD O'NEIL.

THE LORD O'NEIL v. THE HELENA.

(*Circuit Court, E. D. Pennsylvania.*   January 29, 1886.)

COLLISION—INTERFERING COURSES—PRECAUTIONS NECESSARY—DAMAGES.

If two vessels, under steam, are approaching each other by interfering courses, so as to involve risk of collision, the vessel which has the other on the starboard side must keep out of the way, and adopt whatever means are necessary to enable her to keep off.  If the proximity is such that stopping is necessary, she must stop at once.

In Admiralty.

*Charles Gibbons*, for the Helena.

*Henry R. Edmunds* and *J. Bayard Henry*, for the Lord O'Neil.

BUTLER, J.   The two cases will be considered together.   The libel filed by the Helena charges, in effect, that the O'Neil, when first observed, (shortly before the collision,) was running down the bay on a course parallel to that of the Helena, about a mile distant, and about one point abaft the Helena's starboard beam;  that the vessels seemed to be gradually approaching, when suddenly, without warning, the O'Neil starboarded her helm, and undertook to cross the Helena's bows;  that the latter,. seeing a collision probable, ordered her wheel hard a-starboard, at the same time stopped the engines, and gave full power astern;  that the O'Neil continued her course, ("which was of an arc, under the influence of a starboard helm,") and carelessly and negligently ran into and collided with the Helena.   It is upon this allegation (and the additional statement that the O'Neil's lookout was deficient) that the case of the Helena rests.   A careful examination of the testimony has satisfied me that the allegation is not sustained.   The weight of the direct testimony, as well as all the inferences arising from surrounding circumstances, are against it.   I am convinced that the O'Neil, when first observed, was not abaft the Helena's beam;  and that she at no time while in view starboarded her helm.   The vessels, with a third, had gone down the river and bay, in company;  the O'Neil in advance, breaking the ice and clearing the way.   Having more speed than the others, the latter vessel, as night came on, had gotten several miles ahead, and soon after was lost to view.   When in the vicinity of Henlopen light, being unable to send her pilot off, she resolved to turn back, run a few miles up, and anchor eastward of the channel.   The testimony is convincing that, after running a short distance up the channel, she turned eastward, pursuing a course to the north-east, or between that and east.   As her green light was visible from the Helena, when she was sighted by that vessel, it is quite certain that she was on the latter course when first observed.   In this situation of the vessels, the duty of the Helena is prescribed by rule 19, (Rev. St. § 4233:)   "If two ves-

[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.

sels under steam are crossing, so as to involve risk of collision, the vessel which has the other on her starboard side shall keep out of the way." That neither vessel changed her course from the time the O'Neil was seen until collision was imminent, seems clear. The fact that they came together, conclusively shows that they were on converging or interfering courses. It is impossible to ascertain the precise course of either. It is quite probable that the Helena was heading a little more to the eastward than her libel and witnesses state, and that the O'Neil was heading E. N. E. Judged by the evidence, the Helena was clearly in fault, in not ascertaining the direction of the O'Neil when the latter was first sighted, and in increasing her speed at this time. She should have stopped at once, if the proximity was such as to render this precaution necessary. If it was not, she should have reduced her speed, and adopted such other measures as were necessary to enable her to keep off. Whether her failure to observe the course and situation of the O'Neil, and to take proper measures to avoid the collision, resulted from neglect to maintain a proper lookout, or from other cause, need not be determined. It was her duty to keep off; and no justifiable cause for failing to do so being shown, she must be held to have been in fault.

Was the O'Neil also in fault? If she saw the Helena's green light, as well as the mast-head light, before changing her course eastward, she was in fault. It must be observed, however, that this fault would not excuse the Helena, because she did not see the former vessel until after the change had taken place, and could not, therefore, have been misled or embarrassed by it. Was the O'Neil, however, guilty of such fault? She had seen the mast-head light when running northward. This, however, gave her no information of the course of the vessel carrying it, and subjected her to no precaution respecting her own course. The evidence satisfies me that the green light was not seen, and was not within view, until the O'Neil had turned eastward. Being upon this course when the situation of the Helena was discovered, it was her duty to hold it. She did so until the collision became imminent, and then turned further eastward in an effort to escape. I am unable to see wherein she failed in duty.

I attribute no material weight to the alleged confession of fault by her master. The vessel was in charge of the pilot, and her movements were governed by his orders. It is incredible that the master, while blaming the Helena, and attributing the collision to her neglect of duty, should have intended to confess that the fault and responsibility were his. He may have been in error in turning back, and running up the bay to anchor, instead of making further effort to get rid of his pilot, and continuing his course to sea, (an error immaterial to the case,) and it is not improbable that this is what he alluded to. Nor do I think it important, under the circumstances, that we have not the testimony of some members of the O'Neil's crew, who had gotten out of reach before the testimony was taken. A decree must therefore be entered in favor of the O'Neil in each case.