## THE BOLIVIA.

### ADAMS *et al. v.* THE BOLIVIA.

*(Circuit Court of Appeals, Second Circuit. December 14, 1891.)*

1. COLLISION—FOG SIGNALS BY SAILING VESSEL—MECHANICAL FOG-HORN.·
   By a collision, during a fog, between a steam-ship and a schooner, the latter received injuries from which she sank. The schooner had no mechanical fog-horn, and, though the horn which she had was sounded, it was not heard by those in charge of the steam-ship. *Held,* that the failure of the schooner to have and use an efficient fog-horn, to be sounded by mechanical means, as required by statute, was at least a contributing cause of the collision.

2. SAME—REDUCING RATE OF SPEED OF STEAM-SHIP.
   A steam-ship, failing to reduce her speed, when going through a fog in one of the main lines of ocean travel between New York and Europe, to such a rate as will admit of her being brought to a stand-still within the distance at which, in the condition of the fog, she can discover another vessel, is guilty of a fault rendering her responsible for damages in case of a collision which might have been avoided if her speed had been less.

3. SAME—MUTUAL FAULT—DIVISION OF DAMAGES.
   Where the loss of a schooner by collision with a steamship in a fog is caused by an improper rate of speed on the part of the steam-ship, and the want of a proper fog-horn on the part of the schooner, the damages must be divided.

   43 Fed. Rep. 173, reversed.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

In Admiralty. Libel by Robert B. Adams and another against the steam-ship Bolivia for the loss of a schooner by collision with the steam-ship. The libel was dismissed. Libelants appeal. Reversed.

*Edward L. Owen,* for appellants.

*Harrington Putnam,* for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. This is a libel by the owners of the schooner Eva I. Smith to recover for the loss of the vessel, her cargo and freight, and the personal effects of her officers and crew, in a collisio▮ with the steamship Bolivia. The libel was dismissed by the district court. The libelants have appealed. The collision took place about 20 miles off Fire island, June 27, 1889, about 11:40 A. M. The schooner, at the time of the collision, was bound from Richmond, Me., to Philadelphia, laden with a cargo of ice. The Bolivia was proceeding from Mediterranean ports to New York. She was an iron steam-ship, built for carrying passengers and freight, and was about 400 feet long. The weather was very foggy. The wind was light, and from the south-west. The schooner was close hauled on the starboard tack, on a course S. by E., and making about 2 or 3 knots an hour. The steam-ship was on a course W. by N., and under a speed of about 7 or 8 knots an hour. The fog set in about half an hour before the collision. The steam-ship had been making about 11 knots an hour before the fog set in, and then her speed was reduced to that which she was maintaining at the time of the collision. The lookouts were doubled, the passengers forward were sent aft, and the engineers were doubled on the watch below, and ordered to stand by the engines. When going at a speed of 11 knots she would run about 4 lengths of herself before stopping, when the order to stop and reverse was executed as promptly as possible; and going between 7 and 8 knots she would run about 3 lengths. The schooner did not have any mechanical fog-horn. After the fog set in, her fog-horn was blown at proper intervals, forward. Her men heard the fog signals of the steamer several times before the steamer was visible, and on each occasion the schooner's horn was immediately sounded in the direction of the steamer. The fog-horn of the schooner was not an efficient one. If it had been, under the conditions of the wind, it would, in all probability, have been heard by some of those in charge of the steamer. As it was, none of them heard it. They discovered the schooner as soon as she was visible in the condition of the fog, and she was then 300 or 400 feet away. The schooner saw the steamer when she was twice that distance away, probably because the fog was denser on the deck of the steamer than it was lower down on the schooner's deck. As soon as the schooner was discovered by the steam-ship she ported, to go under the schooner's stern, and reversed her engines; but, although she nearly cleared the schooner, she was unable to avoid her, and struck her on the port side, abaft of her main rigging, cutting her down to the water's edge, and the schooner shortly thereafter sunk.

The schooner was plainly in fault for not complying with the statute, which, since 1885, has required sailing vessels to be provided with an efficient fog-horn, to be sounded by mechanical means. Act March 3, 1885, (23 St. p. 438, c. 354, art. 12.) By presumption of law, as she was at the time of the collision in violation of a statutory rule, intended to prevent collision, her fault was at least a contributory cause of the disaster. Under the circumstances of the present case, it seems more than probable that, if she had been provided with and had properly used such a fog-horn as the statute prescribes, the steam-ship would have

been notified of her proximity, and could have reduced her speed to the lowest rate consistent with her ability to control herself efficiently in a moment of peril.

The steam-ship must also be held in fault because she was not going at a moderate speed in the fog, under the special circumstances and conditions of the case. Act March 3, 1885, (23 St. p. 438, c. 354, art. 13.) She has given no evidence to show what speed she was required to maintain in order to keep steerage-way, and none to show that at a lower rate of speed than at 7 or 8 knots she would not have been under efficient control, and able to govern her own movements promptly and effectually. Under the existing state of the fog, and exercising the best vigilance, she could not discover another vessel more than 300 or 400 feet away, yet maintained such a speed that, after reversing, her headway through the water could not be stopped within three times that distance. The locality was one frequented by numerous vessels in the coasting trade, and lay in one of the paths of the ocean traffic between Europe and the principal commercial port of this country. The steam-ship had but just passed a sister steam-ship of her own line, bound in an opposite direction; and the schooner had seen or heard several vessels during the previous half hour of the fog. Under such circumstances, it is not enough that the steam-ship moderated her speed; she should have reduced it to that moderate speed which was safe and prudent, in view of all the circumstances and conditions of the case. The rule is firmly established in this country, and also in England, that the speed of a steam-ship is not moderate, at least in localities where there is a likelihood of meeting other vessels, if it is such that she cannot reverse her engines and be brought to a stand-still within the distance at which, in the condition of the fog, she can discover another vessel. *The Colorado*, 91 U. S. 692; *The Nacoochee*, 137 U. S. 330, 11 Sup. Ct. Rep. 122; *The Europa*, 2 Eng. Law & Eq. 557; *The Batavier*, 9 Moore, P. C. 286.

We cannot agree with the opinion of the learned district judge that the fault of the steam-ship was not contributory to the collision. The burden is upon her to show that it was not, and from the nature of the case this cannot be done. If she had been going slower, she would not have reached the place of the collision when the schooner was there. If, going at the speed she was, and seeing the schooner as she did, she was able to almost clear the schooner, it is quite obvious that going at a less speed, under equally efficient control, she would probably have been able to avoid the schooner wholly. The facts are very similar to those in *The Pennsylvania*, 19 Wall. 125, where the collision occurred in a fog about 200 miles from Sandy Hook, between a bark, going very slowly and ringing a bell as a fog signal, and a steamer, going at the rate of 7 knots. The court divided the damages, holding both vessels in fault; the steamer, because not maintaining moderate speed, and the bark for not using a fog-horn. The court in that case applied the rule that it is to be presumed against a vessel which, at the time of a collision, is in violation of a statutory rule intended to prevent collisions, that her fault was at least a contributory cause of the disaster, and that the burden rests upon

her of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.

We regret to have to apply the strict rule of the authorities in respect to moderate speed in a fog against the steam-ship in favor of a vessel that neglected to provide herself with any adequate means to enable the steam-ship to discover and avoid her, or for her own protection, or that of other vessels, in a fog; but we must conform to the law as it has been enacted and construed. The case is one for a division of the loss.

The decree below is reversed, and the cause remanded, with instructions to ascertain the damages, and render a decree for the libelants, dividing the damages, and for half the costs of the district court and the costs of this court.