# THE TRAVE.[1]

## LAW et al. v. THE TRAVE.

### (District Court, S. D. New York. April 7, 1893.)

1. Collision—Fog—Speed—Entering Fog Bank.
   A steamship entered a fog bank, and thereupon reduced her engines a half a dozen revolutions, bringing her speed down from 16 to about 15

[1]Reported by E. G. Benedict, Esq., of the New York bar.

knots. The fog suddenly became dense, and within a few minutes a sailing vessel was seen about a length ahead, with which the steamship collided. *Held*, that the steamship was in fault for not reducing her speed at once, on entering the fog bank, to the moderate speed required by statute.

2. SAME—MECHANICAL FOG HORN—NECESSITY FOR SPARE HORN.

A vessel is not properly equipped at sea which has no spare mechanical fog horn. Hence, where a sailing vessel's mechanical fog horn had become out of order, and the vessel was run down in a fog while using an ordinary mouth horn as a substitute, and the evidence indicated that a mechanical fog horn might have given seasonable warning, *held*, that she was in fault for improper fog signals.

In Admiralty. Libel by William Law and others against the steamship Trave for collision. Decree for divided damages.

Carver & Blodgett and Mr. Putnam, for libelants.
Shipman, Larocque & Choate, for claimants.

BROWN, District Judge. The above libel was filed by the owners of the British ship Fred. B. Taylor to recover their damages arising from collision with the North German Lloyd steamship Trave, in a dense fog some 240 miles to the eastward of Sandy Hook at about half past 6 in the morning, steamer's time, June 22, 1892, whereby the ship was cut in two and sunk.

The steamer was outward bound, and on her usual course, going about due east. The ship was bound from Havre to New York. The wind was moderate from the W. S. W., and the ship was sailing upon her port tack, heading about N. W. She had been sailing for several days in fog, so as to be unable to take observations. The steamer, until about five minutes before collision, had clear weather, and was going at about full speed. A few minutes before the collision the sky began to grow hazy; fog was evidently apprehended; two of the lookout were called down from the crow's nest and stationed at the bow, as required in thick weather. Orders were given to close the compartments, and to the engineer to stand by, and a reduction of half a dozen revolutions of the engine was made, bringing the speed of the Trave to about 15 knots. The sun, from an hour and a half to two hours high, was still visible. The fog suddenly became dense; within two or three minutes afterwards the loom of the ship's sails was seen by the starboard lookout a couple of points on the starboard bow, and he immediately reported to the officer on the bridge, who answered the lookout's report with a wave of the hand, and a little afterwards the ship's horn was heard. The steamer's engines were reversed as soon as possible and her helm was put hard aport, but without avail. Her stem struck the port side of the ship at an angle of about 80 degrees between the main and mizzen chains, cut her in two and passed between the two parts of the wreck, and disappeared in the fog. Some of the ship's crew were drowned; but most, including the master, were recovered from the wreck.

1. I find it impossible, under decisions binding on this court, to acquit the steamer of the charge of legal fault in running at nearly full speed in thick fog. No doubt the coming on of the fog was very

sudden; but it was not so sudden but that her speed could have become "moderate" had her officers chosen to give prompt orders to reduce it to the moderate rate allowed by the regulations. The steamer, doubtless, had no notice of the ship's near presence, as she was invisible in the dense fog ahead; and no sound of the ship's horn was heard until after her sails were seen. The chances that she would meet a vessel so speedily near the very edge of the fog were no doubt small; but in not bringing her speed down at once on entering the fog, the steamer took all the risk, and the attendant responsibility. A similar question was presented in this court in the case of The City of Alexandria, 31 Fed. Rep. 427, 431, in which it was held that the steamer running into a fog bank was bound, at her own risk, to have moderate speed as soon as she got into the fog, and to regulate her approach to a fog bank accordingly. Had this steamer slowed as soon as she got into the thick fog, there is no doubt that she would have cleared the ship, as she lacked only 100 feet of doing so, as it was. The question of what constitutes a moderate speed in a fog has been so often considered and adjudicated by the supreme court, that further discussion on that point here would be inappropriate. The Nacoochee, 22 Fed. Rep. 855; Id., 137 U. S. 330, 11 Sup. Ct. Rep. 122; The Normandie, 43 Fed. Rep. 151, 157; The Bolivia, 49 Fed. Rep. 169, 1 C. C. A. 221.

2. The ship, however, must also be held in fault for not complying with article 12 of the new international regulations, which required that she should be provided with an efficient "fog horn to be sounded by a bellows or other mechanical means." The ship, on leaving Havre, had such a horn, provided with a piston for blowing it by mechanical means; but there was considerable fog on the voyage, and a few days before this collision the apparatus had got out of order by the derangement of some valve, and a horn blown by the mouth was thereafter used instead.

The object of the new rule, which is as obligatory on sailing vessels as on steamers, (The Wyanoke, 40 Fed. Rep. 702; The Catalonia. 43 Fed. Rep. 396; The Bolivia, 49 Fed. Rep. 169, 1 C. C. A. 221,) is manifestly for the purpose of securing louder and more penetrating blasts than can be given by the mouth, in order that the presence of vessels in fog may be made known at a greater distance, and a better opportunity thereby be given to avoid collision. If, therefore, there is any obligation at all upon a ship to make provision for the possible giving out of a single fog horn on the voyage, this obligation is not satisfied by supplying a spare horn substantially different from what the statute requires. I cannot doubt that the obligations of reasonable prudence do require in a matter so essential to safe navigation upon the Atlantic, as a fog horn for use during fog, that a spare horn should be provided to meet the liability to loss or derangement that may happen from various causes during the voyage. A ship that started across the Atlantic with no spare compass, chain, or tackle, would surely not be deemed reasonably equipped for the voyage; and she could not plead her lack of equipment in any of these respects as an excuse for noncompliance with the rules of navigation. It is the same with so important an article as a fog horn;

and no substitute can be lawfully supplied substantially different from what the statute requires. I cannot follow The Chilian, 4 Asp. 473.

It is impossible to say that the lack of a mechanical fog horn in this case would have made no difference. On the contrary, there is every probability that it might have made a difference sufficient to have avoided collision; for the last blast given happened to come after the sails of the ship had been seen. At the previous blast, given probably a minute before, the steamer was too far away to hear it; whereas the blast of a mechanical fog horn, given at the same time, might very probably have been heard; and the slowing of the steamer, which would naturally have been thereupon ordered a minute earlier, would certainly have avoided this collision. It is not incumbent, however, on the steamer to show that the use of a mechanical fog horn would have certainly prevented collision. The burden, upon noncompliance with the statute, is upon the faulty ship. She remains in fault unless she can prove certainly that a compliance with the statute could not possibly have made any difference; and this, as in the case of The Pennsylvania, 19 Wall. 125, 137, 138, is impossible. The Bolivia, supra.

The damages and costs must, therefore, be divided. A decree may be entered accordingly, with an order of reference to compute the damage, if not agreed upon.