THAMES TOWBOAT CO. v. CENTRAL R. CO. OF NEW JERSEY.

(District Court, D. Connecticut. April 7, 1894.)

No. 976.

COLLISION—TUGS ON CROSSING COURSES.

 Tugs on crossing courses at night saw each other a quarter of a mile apart. Each whistled, and shortly afterwards ported her helm. About a minute later, danger signals were exchanged, and each reversed until collision. The one having the other on her starboard hand was incumbered by two car floats. *Held*, that it was her plain duty, on discovering the other, to immediately reverse in order to keep out of the way (rules 19 and 21, § 4233, Rev. St.), and that the special circumstance rule (No. 24) had no application. The Emma Kate Ross, 41 Fed. 826, and 46 Fed. 872, applied.

This was a libel by the Thames Towboat Company against the Central Railroad Company of New Jersey to recover damages for a collision.

Samuel Park, for libelant.

Stewart & Macklin, for defendant.

TOWNSEND, District Judge. On the evening of December 5, 1892, at about 7:40 o'clock, the libelant's steam tug Nathan Hale, 135 feet long, 750 horse power, left Brown's dock, Jersey City, to go down the North river to Jersey flats for a tow, taking a south and west course, parallel to the Jersey shore, and about a quarter of a mile out therefrom. On the same evening the respondent's steam tug Red Ash, 95 feet long, started from Thirty-Second street, East river, to go to respondent's pier No. 6, at Communipaw, N. J. She rounded the Battery at a distance of about 600 feet, and took a westerly course across the river towards said pier. She had a loaded car float lashed on either side, the heavier float being on her starboard side. So far as is material to this case, each boat carried regulation lights, had a sufficient lookout, and was properly officered and manned. It was a moonlight night, the tide was flood, and there were no vessels near to interfere with the navigation of the tugs.

The captain of the Nathan Hale saw the Red Ash when she was about a quarter of a mile distant, and about five points on his port bow, and gave a signal of one whistle, which was immediately answered by one whistle from the Red Ash. In about a minute the

captain of the Red Ash gave an alarm whistle, which was answered by an alarm whistle, followed by three short whistles, from the Hale. Four witnesses from each vessel swear that, immediately after the first whistle, each tug ported her wheel, and, after the alarm whistle, each stopped and backed full speed, and continued so to back until they collided, the port bow of the Nathan Hale striking the starboard side of the starboard float. There is no testimony in the case other than that of the aforesaid witnesses, except as to the angle of collision. The time between the first whistle from the Hale and the collision was probably about two or three minutes.

The libelant claims the Red Ash was in fault in that, having the Nathan Hale on her starboard side, she failed to obey rule 19, § 4233, Rev. St. U. S., and keep out of the way of the Nathan Hale. The testimony of the Red Ash witnesses shows that the course of the Red Ash was not changed. The reason alleged by them is that the boat was backed immediately after the wheel was put to port, and, owing to the heavier float being on the starboard side, she backed nearly straight. The respondent claims that while, ordinarily, under said statutory rule 19, it would have been the duty of the Red Ash to keep out of the way of the Hale, yet, under the circumstances of this case, rule 24 is applicable. Said rule provides that "in construing and obeying these rules due regard must be had to all dangers of navigation, and to any special circumstances which may exist in any particular case rendering a departure from them necessary in order to avoid any immediate danger." In support of this claim, respondent alleges certain faults on the part of the Hale. These will be considered later. But, assuming the truth of the statements of the witnesses for the Red Ash, they do not justify her failure to stop and back as soon as she heard the whistle from the Hale, and saw that she was close to her, and on her starboard side. No "special circumstances" either rendered a departure from this manifest duty necessary or justified a disobedience of the nineteenth rule. As it is not claimed that to hold her course tended to avoid the danger, whichever proper course the Hale should take, rule 24 did not apply. The most that can be said is that the captain of the Red Ash may have thought that the Hale would pass across his bow, and that, therefore, obedience to said rule was not necessary. In this it appears he was mistaken, and the presumption applied in such cases, that the accident was caused by his negligence, must be applied here. It is the settled rule that, where a vessel has committed a positive breach of statute, she must not only show that probably her fault did not contribute to the disaster, but that it could not have done so. Belden v. Chase, 150 U. S. 674, 699, 14 Sup. Ct. 264; The Pennsylvania, 19 Wall. 125; Richelieu & O. Nav. Co. v. Boston Marine Ins. Co., 136 U. S. 408, 432, 10 Sup. Ct. 934; The Bolivia, 1 C. C. A. 221, 49 Fed. 169.

The deck hand on the Red Ash saw the Hale a few seconds before she whistled, but failed to report the fact. The master of the Red Ash saw her a quarter of a mile off, on his starboard bow. He was in fault for not having seen her sooner. She was then so near

as to involve risk of collision. It was his duty to keep out of her way, under said rule 19, and, if necessary, to stop and reverse, under rule 21. It was the right and duty of the Hale to "keep her course, subject to the qualifications of rule 24." Rule 23, § 4233, Rev. St. But, in defiance of these rules, the master of the Red Ash, although he clearly saw the lights and hull of the Hale, and thought she was going eight or ten miles an hour, speculated on his chances, and first slowed, then ported partially, although, going 5 or 6 miles an hour by land, and with such a tow, he knew that "for a few minutes the boat will keep the same motion, but gradually she will slow down;" and, during a period which he testified might be 30 seconds, he continued on his course with the headway she had on. She held her way for a considerable distance, or "a little over 200 feet," and then he blew an alarm whistle, and backed full speed, over a minute after the time he first heard the Hale's whistle, when it was too late to avoid the collision; and the Hale struck the float, which was lashed stern end ahead, only 25 or 30 feet from the stern. Under these circumstances, it seems to me that the Red Ash is solely responsible for the collision. The two vessels being upon crossing or interfering courses, the vessel whose duty it is to keep out of the way is liable for the damage, provided she fails to allow a sufficient margin for the contingencies of navigation. The Laura V. Rose, 28 Fed. 104; Wells v. Armstrong, 29 Fed. 216; The Helena v. O'Neil, 26 Fed. 463.

The respondent alleges that the Hale was in fault because she did not port her wheel after having given the signal of one whistle. This claim is supported only by evidence from the Red Ash witnesses that they saw no change of course. Her captain says he could not see what was done on the Hale, and that "you only tell from the churning of the water whether the wheel was ported." The Hale's witnesses swear she ported her helm immediately after her first whistle. The relative value of the testimony of those on board the Hale as to her movements is greater than of the witnesses on the Red Ash, especially in view of the indefinite and uncertain character of their testimony. The Hope, 4 Fed. 89; The Wiman, 20 Fed. 248, 249; The Avon, 22 Fed. 905; The Alberta, 23 Fed. 810; The Columbia, 29 Fed. 718; The Alexander Folsom, 3 C. C. A. 165, 52 Fed. 411; The Havana, 54 Fed. 413. The respondent further alleges that the Hale did not seasonably stop and back, and keep out of the way of the Red Ash. But it is not denied that she was reversing her wheel at the time of the collision, and the evidence of the Hale's witnesses shows that she began to stop and back a few seconds after the first whistle,—as soon as the Red Ash sounded her alarm whistle. The claim that "the Hale knew, or ought to have known, that the tow she saw was a Central Railroad tow, bound for the New Jersey Central slip," is not supported by the evidence. The conclusions already reached dispose of the claim that, as the Hale was running against the tide, she was bound to port her helm. As to the angle of the blow, the Hale's witnesses claim she was heading towards the Jersey shore, and struck the float a glancing blow; the Red Ash witnesses claim the float was struck at right

angles. The evidence as to the bow of the Hale after the accident shows it was twisted to starboard, but does not show how she struck. The dent in the float indicates a blow at right angles.

I conclude, upon all the evidence, that the Hale was probably going at a somewhat faster rate than was testified to by her witnesses; that the captain ported his wheel as alleged, but that the time was so short between the answering whistle from the Red Ash and her alarm whistle that the course of the Hale was not materially changed before he reversed and began to back water, and that for these reasons she was practically "dead in the water" when the collision occurred. In that event she would have struck the float at nearly right angles. I find no evidence sufficient to support the claim of negligence on the part of the Hale. It is unnecessary to consider the inspector's rules, which, by stipulation, are to be considered in evidence. The case of The Emma Kate Ross, 41 Fed. 826, affirmed 46 Fed. 872, presents the same questions raised in this case, and supports the conclusions herein reached.

Let a decree be entered for the libelant, with the usual reference to a commissioner.