## THE SAALE.

### NORTH GERMAN LLOYD v. TROUTON et al.

(Circuit Court of Appeals, Second Circuit. September 12, 1894.)

No. 157.

1. COLLISION—STEAM AND SAIL IN FOG—MODERATE SPEED.
   A reduction of but 1 knot from a full speed of 16 knots is not "moderate speed." Nor is 10 knots moderate speed, if it does not enable the steamer to avoid a vessel sighted in her track at a distance of from twice to three times her length. 59 Fed. 716, affirmed.

**2. SAME.**

> A steamer is bound to reduce speed as soon as she enters a fog bank, and failure to do so for a brief space—two to five minutes—puts her in fault for a resulting collision. 59 Fed. 716, affirmed.

Appeal from a decree of the district court, southern district of New York (59 Fed. 716) holding the steamship Saale liable to the libelants, owners of the cargo laden on the bark Tordenskjold, which was sunk by a collision with said steamship on August 4, 1892, about 7 p. m., in 43° 31′ north latitude, and 56° 4′ west longitude. The bark was struck on the port side between the fore and main rigging, the angle of collision being about seven points between the bows of the two vessels.

William D. Shipman, for appellant.

Harrington Putnam, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The district judge found that the bark, which had been sailing about northwest, changed her course to starboard after hearing the steamer's whistle, and that, had she not so changed, the steamer would unquestionably have passed her by a good margin without collision. This finding is supported by the evidence, and fixes the primary responsibility for the collision upon the bark. The change of course by the bark was made before the steamer sighted her, and did not mislead the latter's officers. The libelants, owners of cargo, and therefore not themselves in any fault, further contended that the steamship was not, at the time of collision, navigating at the moderate speed required by article 13 of the international rules of 1885. The district judge so found, and further held that the steamer failed to show that this statutory fault could not have contributed to the collision. The rule cited requires that "every ship * * * shall in a fog, mist, or falling snow, go at a moderate speed." That the Saale, whose full speed was about 16 knots, was going at 15 knots, is conceded. The atmospheric condition is in dispute on the testimony. All the witnesses from the bark testify that she had been running in a thick fog for about two hours prior to the time of collision. They were of course unable to testify to the atmospheric conditions surrounding the steamer until the moment before the catastrophe. The log of the Saale reports: "Until 6 p. m., light hazy mist; later, passing fog showers. Gave fog signals according to rules. Compartments closed. Placed double lookout. At 6:40 p. m., set engine telegraph on 'Stand-by.' Somewhat invisible. * * * We, on the bridge, were under the impression of still being able to see a mile off." The officers of the Saale, when called to the stand, corroborated this statement as to the impression prevailing on the bridge, but both lookouts, stationed on the bow, testified that for about four or five minutes before they saw the bark the steamer was in a fog so dense that they could not see more than two or three lengths ahead. No change, however, was made in the speed of the Saale until she sighted the Tordenskjold, about a minute before collision, at a distance which the officers on the bridge estimated at from 1,200 to 1,400 feet, and

the lookouts and boatswain (the latter standing on the foredeck) estimated at from a length to a length and a half (440 to 660 feet). The helm was at once ordered hard a-port, and the engine reversed as soon as possible. There is in fact no contention that there was any failure on the part of the Saale to do all she could to avoid collision after sighting. The whistles of the Saale were heard on the bark, but the bark's fog horn, though sounded properly, and at regular intervals, was not heard on the steamer until just as she was sighted. We concur with the district judge in the finding that the fog was of such density as made the thirteenth article applicable, and required the Saale to go at "moderate" speed. However free from mist the atmosphere may have been for the hour preceding collision, the moment she ran her nose into the bank or jacket of fog in which the bark lay hid it became at once her duty to moderate her speed. The City of Alexandria, 31 Fed. 431; The Trave, 55 Fed. 119. Although the Saale was not in a dense fog until she entered the bank in which the bark was enveloped, we are satisfied from the evidence that for a brief space before sighting—2, 3, 4, or 5 minutes —both vessels were moving in a dense fog, and during that time the steamer in no way reduced her speed of 15 knots. Her full speed was 16 knots, and the testimony shows that from full speed it takes 4 minutes under reversed engines to bring her to a standstill. There is no evidence in the case to show within what time or distance she can be brought to a standstill from a more moderate speed. That a reduction of but one knot from such speed is not a compliance with the thirteenth article, when the atmosphere in which the steamer is moving makes such article applicable, is no longer open to discussion. Whatever may be the demands of passengers, freighters, and postmasters-general as to maintaining the highest speed attainable, controlling authority has prescribed that speed in a fog shall be moderate; and, however difficult it may be to define the word "moderate" with mathematical precision, it is abundantly settled by similar authority that a reduction of but 1 knot from a full speed of 16 is not a compliance with the rule. The Pennsylvania, 19 Wall. 135; The Nacoochee, 137 U. S. 330, 11 Sup. Ct. 122; The City of New York, 147 U. S. 72, 13 Sup. Ct. 211.

We are further of the opinion that, had the steamer been going at the moderate speed which the thirteenth article requires, she could have cleared the bark. The district judge reached the same conclusion. Elaborate calculations are presented by the appellant to prove the negative of this proposition on the assumption that the steamer, before sighting, was running at the rate of 10 knots. It is not necessary to review these calculations, since, if 10 knots were a speed so great that the steamer could not avoid a vessel lying in her track within the space at which she sighted her,—which the evidence shows to be from twice to three times her own length,— then it was not moderate, under the authorities above cited. She should have reduced to nine, or even eight, knots, and certainly the evidence does not warrant the finding that at that speed she could not have cleared the bark. The decree of the district court is affirmed, with interest and costs.