## THE TRAVE.

## LAW et al. v. NORTH GERMAN LLOYD.

(Circuit Court of Appeals, Second Circuit. May 28, 1895.)

No. 111.

1. COLLISION BETWEEN STEAMER AND SAIL—EXCESSIVE SPEED IN FOG.
   A steamship which collided with a sailing vessel in the Atlantic Ocean, about five minutes after entering a fog bank, *held* in fault because she had only reduced the rate of her engines by half a dozen revolutions, which brought her speed down to about 15 knots an hour. 55 Fed. 117, affirmed.

2. SAME—SAILING VESSELS—FOG HORNS.
   A sailing vessel which was provided at the commencement of her voyage across the Atlantic with an efficient mechanical fog horn, in good order, and with a good mouth horn, *held* to have complied both with the requirements of prudence and of sailing article 12; and where, after sailing several days in a fog, her mechanical horn became disabled by injury to the valve, *held* that she was not in fault for a collision, it appearing that the mouth horn was being properly sounded. 55 Fed. 117, reversed; The Chilian, 4 Asp. 473, followed.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by William Law and others against the steamship Trave, to recover damages for the sinking of their sailing ship, Fred B. Taylor, as the result of a collision with the steamship. The district court found both vessels in fault, and entered a decree for divided damages. 55 Fed. 117. The libelants appeal.

Eugene P. Carver, for libelants.
Wm. D. Shipman and Ernest Luce, for the Trave.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The appeal presents but a single question of law. The undisputed facts in regard to the collision are stated by the district judge as follows:

"The above libel was filed by the owners of the British ship Fred B. Taylor to recover their damages arising from collision with the North German Lloyd steamship Trave, in a dense fog some 240 miles to the eastward of Sandy Hook, at about half past six in the morning, steamer's time, June 22, 1892, whereby the ship was cut in two and sunk. The steamer was outward bound, and on her usual course, going about due east. The ship was bound from Havre to New York. The wind was moderate from the west-southwest, and the ship was sailing upon her port tack, heading about northwest. She had been sailing for several days in fog, so as to be unable to take observations. The steamer, until about five minutes before collision, had clear weather, and was going at about full speed. A few minutes before the collision the sky began to grow hazy. Fog was evidently apprehended. Two of the lookouts were called down from the crow's nest, and stationed at the bow, as required in thick weather. Orders were given to close the compartments, and to the engineer to stand by, and a reduction of half a dozen revolutions of the engine was made, bringing the speed of the Trave to about 15 knots. The sun, from an hour and a half to two hours high, was still visible. The fog suddenly became dense. Within two or three minutes afterwards the loom of the ship's sails was seen by the starboard lookout a couple of points"

on the starboard bow, and he immediately reported to the officer on the bridge, who answered the lookout's report with a wave of the hand, and a little afterwards the ship's horn was heard. The steamer's engines were reversed as soon as possible, and her helm was put hard a-port, but without avail. Her stem struck the port side of the ship at an angle of about 80 degrees between the main and mizzen chains, cut her in two. and passed between the two parts of the wreck, and disappeared in the fog. Some of the ship's crew were drowned, but most, including the master, were recovered from the wreck."

Upon this state of facts the district judge was of opinion that it was impossible to acquit the Trave of the charge of running at nearly full speed in thick fog, and that she must be held to have been in fault. The Pennsylvania, 19 Wall. 125; The Nacoochee, 137 U. S. 330, 11 Sup. Ct. 122; The Bolivia, 1 U. S. App. 26, 1 C. C. A. 221, 49 Fed. 169. His decision is conceded to be a correct exposition of the law as declared by the supreme court. The second set of facts upon which the question arises is as follows: The ship Fred B. Taylor, a large wooden ship of 1,800 tons register, left Havre, May. 12, 1892, with an efficient mechanical fog horn on board, in good order, and as efficient for producing sound as those ordinarily in use. It was from 2½ to 3 feet high; was fastened to the deck; was operated by pumping with a handle like that of a pump. The vessel had also on board a good mouth horn. She encountered almost continuous foggy weather. The mechanical horn was used for about 10 days in the English channel, and thereafter for about 14 days, when the valve got out of order, about 4 days before the collision, and the captain was unable to ascertain or remove the cause of the difficulty. It did not thereafter make a proper noise, and the captain used the mouth horn, which was being properly blown before and at the time of the collision. The inference can fairly be drawn from the facts that the injury to the valve resulted from the constant and necessary use upon that voyage, and not from want of proper care and attention on the part of the navigators. Article 12 of the international sailing rules of 1885 provides that:

"A steamship shall be provided with a steam whistle, or other efficient steam sound signals * * * and with an efficient fog horn, to be sounded by a bellows or other mechanical means, and also with an efficient bell. A sailing ship shall be provided with a similar fog horn and bell."

The statutory obligation upon a sailing vessel to have a fog horn in a state of efficiency and readiness is imperative, but a temporary inability to furnish such a horn may be excused, if a sufficient reason can be given for such inability. The district judge was of opinion that an accidental injury to the horn during the voyage, without fault of the crew, was not a sufficient excuse, because the obligation of reasonable prudence required, "in a matter so essential to safe navigation upon the Atlantic as a fog horn for use during a fog, that a spare horn should be provided to meet the liability to loss or derangement that may happen, from various causes, during the voyage." It is a part of prudence that a ship should be provided with a mouth horn as well as a mechanical horn, because the latter

must, as a rule, be fastened or secured to the deck, and oftentimes, in heavy weather, such a horn could not be used; but if the vessel is provided, at the outset of a voyage across the Atlantic, with an efficient mechanical horn, which is in good order, and also has an ordinary horn for use when, through stress of weather, or accident not caused by negligence, the other device cannot be employed, we think that the requirements both of the statute and of prudence have been complied with, and that there is a sufficient excuse for the accidental incompetency of the mechanical horn. It is not desirable to construe a statute for the protection of property and life in such a manner that its requirements can be evaded or easily avoided, but we think that a construction which imposes upon the owners the necessity of providing a supply of mechanical fog horns, so that their efficiency shall be in a measure guarantied, partakes of severity. The Chilian, 4 Asp. 473, decided by Sir Robert Phillimore in 1881, is a case very much in point. The Chilian, a screw steamship belonging to the port of Liverpool, of 1,306 tons register, collided in a fog in the Irish Channel, upon a voyage from Baltimore to Liverpool, with a Norwegian vessel. Article 12 of the British regulations for preventing collisions at sea is in the language of the article under discussion. The seventeenth section of the merchants' shipping act of 1873 provided that in cases of collision the vessel which infringes any of the regulations shall be deemed in fault, "unless it is shown to the satisfaction of the court that the circumstances of the case made departure from the regulations necessary." The Chilian had a mechanical fog horn, which was bought at Rotterdam, and found to be satisfactory, but had not been tried upon this voyage, until the day before the collision, when it was found to be out of repair. A powerful mouth horn was thereupon used. Sir Robert Phillimore, after consultation with the trinity masters, was of opinion that the circumstances did make a departure from the rule necessary; that an accident had befallen the fog horn, which was in itself a proper instrument; and that it would be a severe construction of the act to hold that the vessel was in fault. We are of opinion that international article 12 is not more absolute in its requirements than the same British rule had been construed to be in 1881, and that the libelants' vessel presented an adequate excuse for her inability to use a mechanical fog horn at the time of the collision. The decree of the district court is reversed, with costs of this court, and the cause is remanded to that court, with instructions to enter a decree that the libelants recover the entire damages sustained by them by reason of the collision in the libel mentioned, with costs.