THE GRENADIER v. THE AUGUST KORFF.

THE AUGUST KORFF v. THE GRENADIER.

(District Court, E. D. Pennsylvania. June 30, 1896.)

1. COLLISION—STEAMERS IN FOG—SPEED.
Where steamers become aware of each other's presence, in a fog so dense that neither can be seen beyond two lengths, and that the sound of the fog signals is liable to be deflected, the duty of each is to stop and await the lifting of the fog, or, at all events, to slow down so completely that each can stop within the distance in which a vessel can certainly be seen.

2. SAME—APPLICATION OF RULES.
Articles 16 and 22 of the International Rules, which provide that if two ships under steam are crossing so as to involve risk of collision, the ship which has the other on her own starboard side shall keep out of the way and the other shall keep her course, do not apply to cases where the vessels, though crossing, cannot see each other or ascertain their respective locations and bearings because of fog.

3. SAME.
Where two steamers collided in a dense fog, one of them having stopped her engines, and commenced to back, soon after hearing the other's fog signal, while the latter did not slow materially, if at all, below half speed, until near the moment of collision, *held*, that the latter was solely in fault.

These were cross libels in rem to recover damages resulting from a collision between the steamers Grenadier and August Korff.

Convers & Kirlin, for the Grenadier.

Robert D. Benedict and Henry R. Edmunds, for the August Korff.

BUTLER, District Judge. On the morning of August 1, 1894, at 24 minutes past 6 o'clock (according to the Grenadier's time, and 12 minutes past 7 o'clock, according to the Korff's) the Grenadier, a steamship of 921 tons register, and 236 feet long, on her way from Rotterdam to Newcastle, and the steamship Korff, of 3,104 tons register, and 365 feet long, on her way from Nordenham to Philadelphia, collided in the North Sea, in latitude 52–31, and longitude 3–25 E. The Grenadier sank within half an hour, and with her cargo was lost, while the Korff escaped without very serious injury. A fog existed at the time, quite dense, through which it was impossible to see beyond a short distance—probably not beyond two lengths of the shorter vessel. The course of the Grenadier when the Korff's signal was first heard was near N. W., and that of the Korff near S. W. They were unaware of each other's approach until their respective signals were heard, and neither was seen, nor could be seen, until they were dangerously near together—probably within less than twice the length of the smaller vessel. The Korff's stem struck the Grenadier at the beak of her forecastle, on the bluff of her starboard bow, nearly at a right angle, penetrating a distance of 15 to 20 feet.

What occurred before the signals were heard respecting the speed and navigation of the respective vessels is not deemed important. At this time each was enveloped in fog, so dense that the other could not be seen, nor her location or course be ascertained from

the signals heard. They might be near together or far apart; their courses might be crossing, or opposite, or otherwise. Nothing could be determined by sight, and sound was unreliable—likely to be obstructed or deflected, and calculated to mislead.

What was the duty of the vessels under these circumstances? Plainly, I think, it was to stop, and await the lifting of the fog or seek to ascertain each other's situation by repeated signals; at all events (if it was not this) it was to slow down so completely that each could stop forward motion within the distance at which a vessel might certainly be seen through the fog. To move with greater rapidity under the circumstances would seem to be clearly improper, and indeed reckless. This view has the support of abundant authority: The Bolivia, 1 U. S. App. 26, 30 [1 C. C. A. 221, and 49 Fed. 169]; The Colorado, 91 U. S. 692; The Nacoochee, 137 U. S. 330 [11 Sup. Ct. 122]; The Europa, 2 Eng. Law & Eq. 557; The Batavier, 9 Moore, P. C. 286; The Martello, 153 U. S. 64, 71 [14 Sup. Ct. 723]; Steamship Co. v. Fabre, 1 U. S. App. 614 [3 C. C. A. 534, and 53 Fed. 288].

The Korff's proctors contend that:

"The navigation of the vessel was governed by the 13th, 16th, 18th, and 22d articles of the International Rules:

"Article 13: 'Every ship shall, in a fog, mist or falling snow go at a moderate speed.'

"Article 16: 'If two ships under steam are crossing so as to involve risk of collision, the ship which has the other on her own starboard side shall keep out of the way of the other.'

"Article 18: 'Every steamship when approaching another ship so as to involve risk of collision, shall slacken her speed, or stop and reverse, if necessary.'

"Article 22: 'Where by the above rules one of two ships is to keep out of the way, the other shall keep her course.'

"These vessels were on crossing courses, the Grenadier heading N. N. W., and the Korff heading S. W. ½ W., almost at right angles. And the Grenadier had the Korff on her starboard side. It was therefore her duty to keep out of the way of the Korff. And the burden is upon her to excuse herself."

In the court's judgment neither of the rules invoked, except the eighteenth, is applicable to the circumstances of this case. The thirteenth contemplates navigation in a fog, generally, and not under the special conditions existing here, where the vessels were apparently near together, and their locations and courses unknown to each other. The sixteenth clearly contemplates navigation under ordinary circumstances, where the vessels can see each other and thus ascertain their respective courses. Its application is impossible where the vessels are enveloped in dense fog, unable to see each other or to ascertain their respective locations and bearings. That such was the situation is indisputable. The testimony on both sides shows it. The eighteenth also in terms contemplates that the vessels shall know their respective courses, and thus be able to see the threatened danger. In spirit however, it is applicable to a case where the vessels are hidden from each other by fog, and the signals heard indicate possible danger. Safety then requires that each shall stop for a time, or at least slow down as before stated. After the Grenadier came within sight it was too late to do anything but endeavor to back, and to change head; and

too late to accomplish anything by such endeavor if either of them was making material headway.

Such being the duty of the vessels what did they do?

The Grenadier stopped her engines on hearing the Korff's first signal, and soon after reversed them, and signaled accordingly, on hearing the second, which seemed nearer. Her witnesses testify positively and consistently to this; and upon a full examination of the testimony relating to the subject, I believe them. Nothing in the circumstances of the case conflicts with what they say. It is urged that the character of the Grenadier's wound contradicts them, that it shows her to have been in rapid motion, and to have driven herself with great force against the Korff's stem. In my judgment the character of the wound strongly tends to prove the contrary. It seems not only improbable, but virtually impossible, that the wound should have been produced in this way. If the Korff was still, as she alleges, and the Grenadier in rapid motion the latter would most probably have slid off from the former's stem, with little injury to either. To drive herself against the stem with such force that it would penetrate to her center she must have approached virtually sideways, and with greater speed than she could command in that direction. The wound was in her strongest part, through thick iron plates and heavy timbers, and could in my judgment only be made by a blow of very great force, delivered against her nearly at right angles. Of course, it is impossible to have an entirely accurate description, in all respects of the wound. Its proximate size, direction and depth are not, however, in doubt. There is some dispute about the direction in which the plates were bent. The weight of the evidence, however, is that it was inwards. The Grenadier's witnesses unite in saying it was, and the master of the Korff, when first examined on the subject, agreed with them. The position of the vessels immediately after the collision tends to support this inference from the character of the wound. The Grenadier was turned westward, while the Korff was forward in the same direction.

The Grenadier's effort to back away as the Korff's signal seemed to approach, was not a fault; it indicates a proper degree of caution. It is idle to speculate about what might have occurred if she had not backed, or had moved forward. If she had moved forward with material headway, and collision had resulted, she would have been blamed, and doubtless been held responsible, in part at least, for the consequences.

The Korff did not stop on hearing the Grenadier's first signal; and I believe, after a full examination of her testimony, did not slack up materially, if at all, below half speed until near the moment of collision. Her testimony is not harmonious, and I think the weight of it, when the registrations upon her log are included, supports this view. The testimony of the Grenadier's witnesses who watched her approach and remarked upon it at the time, and the character and consequences of the blow and wound she received, do not leave my mind in doubt. I feel no hesitation in finding that the Korff was blamable in the respect stated, and that this fault alone caused the disaster. The libel against her must therefore be sustained, and her cross libel be dismissed.