### THE JULIA LUCKENBACH.

### THE INDRAKUALA.

(District Court, E. D. Virginia. December 15, 1914.)

#### No. 1823.

1. COLLISION ⊚⟿100—STEAMSHIPS MEETING IN FOG—EXCESSIVE SPEED.

A collision occurred in Chesapeake Bay in a thick fog, which came up suddenly from the south, between the steamships Indrakuala, passing down, and Julia Luckenbach, going up. Before entering the fog the Indrakuala saw the Julia Luckenbach a mile or so ahead, the vessels then being on safe passing courses, and she also heard the Julia Luckenbach's fog signals later. The latter did not see the Indrakuala, and after the fog came on changed her course to port to reach a safe place of anchorage to the westward of the channel, and she was proceeding at an excessive speed on a flood tide, when she was struck by the other vessel and sunk. The Indrakuala was making a speed of about 10 knots, which she did not reduce until she entered the fog; and the evidence tended to show that she was going at excessive speed at the time of collision. *Held* that, knowing that the other vessel was ahead, she should have reduced speed before reaching the fog bank and navigated with the greatest care, and that both vessels were in fault.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 213-215; Dec. Dig. ⊚⟿100.]

2. COLLISION ⊚⟿19—SUITS FOR DAMAGES—DEFENSES.

A vessel whose faults clearly contributed to a collision will not be relieved from liability because of faults on the part of the other vessel.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 17; Dec. Dig. ⊚⟿19.]

In Admiralty. Proceeding by the Indra Line, Limited, owner of the steamship Indrakuala, for limitation of liability. On issue as to fault for collision with the steamship Julia Luckenbach. Finding against both vessels.

Convers & Kirlin, of New York City, and Edward R. Baird, Jr., of Norfolk, Va., for The Indrakuala.

Barry, Wainwright, Thacher & Symmers, of New York City, and Hughes, Little & Seawell, of Norfolk, Va., for The Julia Luckenbach.

Brown & Purdy, of New York City, and Hughes & Vandeventer, of Norfolk, Va., for various personal injury and death claimants.

Blodgett, Jones & Burnham, of Boston, Mass., for cargo owner.

WADDILL, District Judge. This proceeding is now before the court upon the application of the Indra Line, Limited, as owner of the steamship Indrakuala, filed on the 19th day of March, 1913, to

---

⊚⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

secure limitation of liability, pursuant to the statutes of the United States in such cases provided, from losses arising out of a collision between the two steamships named, which occurred in the waters of Chesapeake Bay, on the morning of the 3d day of January, 1913, resulting in considerable damage to the Indrakuala, and the sinking and loss of the Julia Luckenbach, with her cargo, and of several lives.

The original libel was filed against the Indrakuala on behalf of the owners of the Luckenbach, her cargo, and the personal effects of members of her crew, and the damages claimed on account of the loss of the Luckenbach, including her freight money, was $156,452.22. Subsequently four additional libels in rem were filed to recover damages on account of personal injury and death claims, aggregating in all $238,000, and the institution of other suits was threatened. Whereupon this proceeding was commenced, and on the 1st of December, 1913, the return day of the monition issued herein, claims aggregating $173,477.95 were filed, exclusive of the claim of the Luckenbach aforesaid; the same not having been presented in the limited liability case.

[1] The Indrakuala is a British steamship, built in 1912; her general dimensions being 5,691 gross and 3,607 net tons, 430 feet long, 53 feet 7½ inches beam, and at the time of the collision was drawing forward 20 feet 4 inches of water and 22 feet aft. The Julia Luckenbach was an American steamship, built in 1882, 3,100 gross and 1,977 net tons, 313 feet 1 inch long, 36 feet 4 inches beam, and draft at the time of the collision, of 22 to 22½ feet of water, and was en route from Tampa, Fla., to Baltimore, Md., loaded with phosphate rock. The Indrakuala was bound down Chesapeake Bay from Baltimore to New York, and had discharged part of her cargo in Baltimore, which latter place she left on the afternoon of the 2d day of January, in charge of a Maryland pilot, to the Virginia Capes, and during that night, on account of fog, she anchored some 2½ miles to the northward of Smith's Point Light, where she remained until the morning of the 3d, when shortly after 6 o'clock, she resumed her passage down the bay; the weather at the time being clear, with a fresh southerly wind and flood tide.

The Julia Luckenbach anchored off Windmill Point on the night preceding the collision, because of fog, and got under way the morning of the 3d about 7 o'clock. The distance between the places of anchorage of the two vessels on the morning of the 3d, off Windmill Point and above Smith's Point Light, was about 14 miles. The distance from Smith's Point Light to Tangier Gas Buoy was approximately 6⅜ miles; from Tangier Buoy to the scene of the collision, approximately 3½ miles.

The Indrakuala navigated from Smith's Point Light S. 11° W. true to Tangier Buoy, and then S. true to the point of collision. The Luckenbach's course from her anchorage off Windmill Point was N. ½ E. magnetic, until some five minutes before the collision, when she changed her course to N. W. ½ W. The Indrakuala proceeded down the channel in the regular course for downgoing vessels, and the Luckenbach was on the proper course for ascending vessels, being to the

eastward of the channel. Between the Luckenbach's place of anchorage, off Windmill Point, and the scene of the accident, the Merchants' & Miners' Transportation Company's steamship Essex, also ascending the bay, passed the Luckenbach to the westward of her, that is, on her port side; and the Essex met and passed the Indrakuala above the scene of the collision to the eastward, that is, to the port side of that vessel.

The collision occurred at 7:36 of the Indrakuala's time, and 7:45 of the Luckenbach's time (there being a difference between the two ships of some 9 minutes in time), and after the passing of the two ships by the Essex as above indicated. The distance below Tangier Buoy, where it happened, is ascertained with reasonable certainty, namely, 3½ miles, though just where the fog set in, and where the Essex and Indrakuala passed each other below Tangier Buoy, as well as where the Indrakuala, on account of the fog, reduced her speed, is in dispute—the Indrakuala's contention being that when about three-fourths of a mile, or less, of the scene of the collision, at 7:30 she reduced her speed one-half, at 7:33 stopped and reversed full speed astern, and at 7:34 repeated the full speed astern order, and subsequently, after sighting the Luckenbach about two ship's lengths away, she signaled to stop and hardaported, and that at the time of the collision she was substantially stopped in the water, and had lost steerage way; whereas the Luckenbach contends that the Indrakuala was at least a mile and a quarter away when she should have reduced her speed, and that she was making undue speed before and at the time of the collision, and it would not have been possible for her to have done the things claimed by her to have been done regarding slowing down, reversing, etc., within six minutes. The two vessels came together by the stem of the Indrakuala striking the Luckenbach about 10 feet abaft of her stem, and scraping along about 30 feet on her starboard side, cutting into the Luckenbach some 7 feet, tearing off her iron sheeting for a distance of 30 feet, and cutting deeply into her main deck, causing her to sink.

Many faults are assigned by the vessels one against the other, an unusual number of witnesses have been examined at great length, and the case has been fully argued, orally and in writing, with much learning and ability; but in its last analysis it is reduced, in the view of the court, to a comparatively simple inquiry, namely, whether the Indrakuala, after the setting in of the fog, and at the time of the collision, was being prudently and properly navigated; that is to say, whether upon approaching the fog, and entering and becoming enveloped in the same, she exercised the degree of prudence and caution imposed upon her by the rules of navigation—it being in effect a concessum that the Luckenbach was proceeding at an undue rate of speed at the time of the occurrence.

In arriving at a correct conclusion in the premises, the court has had the advantage of certainly four sources of information: First, the testimony of certain of the officers and members of the crew of the Luckenbach, others of them, including the master, having been drowned; secondly, the testimony of those from the Indrakuala, in-

cluding the pilot; thirdly, the testimony of certain officers and members of the crew of the Essex; and, fourthly, the physical conditions, such as the evidence of the lick of the collision, the location of the sunken wreck, and the logs, including the engineer's slate of the Indrakuala, tendered in evidence; and the conclusion reached by the court is that it is evident from the whole testimony that at the time of the collision the vessels were each making considerable and undue headway through the water. The Luckenbach was confessedly so, and it is equally apparent from the angle of, and the effect of the blow of, the collision, if there was no other testimony in support thereof, that the Indrakuala must have been doing the same thing, though not to the same extent.

The court cannot accept the Indrakuala's statement as to the occurrence, namely, that it happened six minutes after she passed the Essex, some half a mile above the collision, as it is highly improbable that she could have done the things she says she did within six minutes, nor the statements of the ship's log, written up four days after the collision, from loose sheets of foolscap paper, and a memorandum book alleged to have been kept, nor the entries from the engineer's slate, the figures upon which bear evidence of having been tampered with; and it is also apparent, from a critical examination of the evidence of her officers and crew, that she was making excessive headway at the time of the collision, and that the injury under the forepeak of the Indrakuala, and to her shell plating below the main deck, was caused by that ship, while making considerable headway, coming into collision with the Luckenbach and in contact with her cargo of phosphate rock, while the latter ship was herself proceeding at undue speed.

The testimony, and especially that of disinterested witnesses from the Essex, is that that vessel and the Indrakuala passed each other approximately a mile and a quarter above the scene of the collision, and it was then that the Indrakuala entered the thick fog, and in order to have reached the scene of the collision in 6 minutes after passing the Essex, she must have traveled much of the time approximately 10 or 11 miles an hour; and the acceptance of this as the correct distance is not inconsistent with the statement of the Indrakuala as to what she attempted to do to check her speed shortly before, but at a time when it was too late to avert the disaster. Upon the Indrakuala's own statement of what she did, in covering the half mile, as she claims the distance to be, within 6 minutes, she should not be held free from fault. She confessedly ran into a thick fog at a speed of at least 10 knots an hour 6 minutes before the collision. She then reduced her speed to one-half, which took from 3½ to 4 minutes, according to her pilot's statement, who also testified that 2 minutes after giving the order to reduce his vessel was proceeding at about 7 knots an hour, thus bringing her to within 4 minutes of the collision at 7 knots an hour, in a dense fog, and to within 4½ knots up to 2 minutes before the collision, and that with knowledge of the presence of a vessel ahead of him in the fog.

The Indrakuala, knowing of the presence of the Luckenbach ahead

of her in the fog, should have proceeded with unusual caution, to have avoided the possibility of the dangers arising from such condition. It is true the Luckenbach, when she became hidden in the fog, was approaching on parallel lines, on a course that would have afforded sufficient margin for the two vessels to have passed each other in safety; but they were approximately a mile apart, and perhaps something more, when the Luckenbach was thus lost sight of, and it was at least hazardous for the Indrakuala to have proceeded upon the theory that the Luckenbach might not and most probably would not vary her course in the thick weather. She manifestly did change her course, and her excuse for so doing was that her purpose was to come to anchor, and considered the western side of the channel the proper place to anchor under the circumstances, because of the dangers on the eastern side of the channel incident to Tangier Buoy, and the undesirability, in her then position, of anchoring in the path of ascending vessels; the Luckenbach's contention being that she did not know of the presence of the Indrakuala ahead of her.

The Indrakuala says that her purpose was also to come to anchor. Both seem to have been engaged in a like undertaking in this respect, and the Indrakuala was charged with knowledge of the fact of the embarrassments incident to anchoring on the eastern side of the channel, and that the Luckenbach's' movements were accelerated by the flood tide and the force of the strong breeze of some 25 miles an hour then prevailing, and her master cannot be held at fault for altering his course in the fog, if he, did not know of the presence of the Indrakuala, and exercised his best judgment in directing his navigation to the westward side of the channel, as a matter of safety, however inexcusable he may have been in attempting to do so at undue speed.

[2] The Indrakuala should at least have slowed down upon approaching and entering the fog, if not have stopped her engines, and for her failure alike to have navigated in anticipation of the approaching fog, and to have reduced her speed, and reversed in time to have had her movements under control, after entering the same, until too late to avoid collision with the Luckenbach, which loomed up some two ship's length's away, and whose fog signals she had heard, she is in fault, and from the consequences of which she will not be relieved by suggesting the undue speed of the other vessel; the culpability of each in this respect having contributed to the accident. The Colorado, 91 U. S. 692, 703, 23 L. Ed. 379; The Nacoochee, 137 U. S. 330, 339, 11 Sup. Ct. 122; 34 L. Ed. 687; The Umbria, 166 U. S. 404, 413, 421, 17 Sup. Ct. 610, 41 L. Ed. 1053 (where will be found a full citation of the American and English cases bearing on the subject of speed of vessels in fog); The City of Alexandria (D. C.) 31 Fed. 428, 431; The Trave (D. C.) 55 Fed. 117 (the last two cases decisions of the late Judge Brown of the Southern District of New York, and the latter of which was approved by the Circuit Court of Appeals, 68 Fed. 390, 15 C. C. A. 485); The Michigan, 63 Fed. 280, 287, 11 C. C. A. 187 (an opinion by the late Judge Hughes, of this district, in the Circuit Court of Appeals of this circuit); The Charlotte (D. C.) 124 Fed. 989, 990.

The Indrakuala insists that she should not be held in fault because until within a few minutes prior to the collision, the weather was clear; that her navigators could see the course they were on, and that the same was not obstructed; and that it was not necessary for their vessel to slow down until she had actually entered the fog bank, after which time they did all that was necessary to be done.

The court cannot agree with these contentions under the circumstances attending this collision. It is true the fog came on quickly, and did not last long, not over half an hour, perhaps; but the Indrakuala was in full view of its approach, saw that her course took her directly into it, and, while at first it was naturally thinner on its outer edges, that in a very short time it must envelop her, as it did, and she should not have continued at full speed, certainly 10 knots an hour, until she ran into a dense fog, which was being rapidly driven by the wind across her pathway, but should have checked her speed in anticipation thereof, and this duty became the more apparent by the known presence of a vessel ahead of her in the fog, which might cross her course, and the fog signals of which vessel she had twice heard.

The Indrakuala further insists that she should not be held liable, because the negligence of the Luckenbach was the proximate cause of the collision, and sufficient within itself to account therefor, and that that vessel should not be relieved of responsibility for her acts, or have others share in her losses, by the suggestion of faults on their part. This doctrine is well established, but should not, in the judgment of the court, serve to relieve the Indrakuala from liability, under the circumstances here, and where her own negligence and want of due care contributed to the collision.

An unusually large number of authorities have been cited by counsel on the respective sides in this case, but it is not considered practical to undertake within a reasonable length of this opinion to go into any discussion of the same, further than to say that they have been fully considered, and are not believed to contain views inconsistent with those expressed here, having regard to the facts of this case.

A decree will be entered upon presentation, determining the faults as herein indicated.