### THE FJELL.

### THE LIVINGSTONIA.

#### (District Court, E. D. Virginia. March 19, 1919.)

1. COLLISION ⬅85—STEAMSHIPS—EVIDENCE—SPEED—FOG.
    Evidence *held* to show that neither of two steamships which collided were proceeding at a moderate rate of speed, having regard to the character and density of the existing fog.
2. COLLISION ⬅82(2)—FOG—SPEED.
    The general rule is that a steamship in a fog should navigate so as to be able to stop in time to avoid collision, providing the approaching vessel is also proceeding at a moderate rate of speed.
3. COLLISION ⬅144—STEAMSHIPS—DIVISION OF DAMAGES.
    Where a collision was caused by two steamships navigating at an unreasonable rate of speed in a fog, the resulting loss should be borne by the vessels jointly.

In Admiralty. Libel by B. Johannesen, master of the steamship Fjell, against the steamship Livingstonia. Decree that loss be borne by steamships jointly.

Hughes, Vandeventer & Eggleston, of Norfolk, Va., for the Fjell.
Hughes, Little & Seawell, of Norfolk, Va., for the Livingstonia.

WADDILL, District Judge. The collision for which the libel in this case was filed occurred between the Norwegian steamship Fjell, 907 tons gross, 221 feet 6 inches long, 32 feet 2 inches beam, and the English steamship Livingstonia, 4,294 tons gross, 385 feet 5 inches long, 50 feet beam, about 11:56 p. m., on the 30th of June, 1918, on the Atlantic Ocean, off Currituck Sound, on the North Carolina coast; the Fjell being on a voyage from New York to Port Haiti, with a gen-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

eral cargo, and the Livingstonia en route from Matanzas to an English port, via Newport News, for bunker coal, with a cargo of sugar. At the time of the collision, the vessels were navigating in a dense fog, which set in about 11:15 p. m., and had increased in density until the happening of the accident, at approximately midnight. The stem of the Livingstonia struck and penetrated the port side of the Fjell abaft of amidship, opposite hatch No. 3, cutting deeply into her, from the effect of which she shortly sank, and with her cargo became a total loss.

Each ship assigns against the other many faults which it is claimed brought about the collision, and each vessel claims that it was virtually at a standstill in the water at the time of the collision, and the other proceeding at undue speed. Save as to the question of speed of the vessels, the testimony is less conflicting than usual in this class of cases. The time, place, and courses of the vessels, the existence of the heavy fog, and when the same set in, are not seriously controverted, and that each ship had been giving appropriate fog signals is not disputed; nor is it denied that each vessel heard the fog signals of the other, and saw their white and running lights an appreciable time before the collision. Indeed, the controversy narrows down to the navigation of the respective vessels after they saw the lights, or at least knew of the presence of the other.

The Fjell insists that upon hearing the whistle of the approaching vessel off her port bow, at approximately 11:45, which afterwards turned out to be the Livingstonia, her engines were put to slow speed, and she thereafter proceeded at very low speed, making little more than steerageway for four or five minutes, when the whistles were again heard on her port bow, somewhat broadened, at 11:50, when her engines were stopped, and continued stopped up to the time of the collision at 11:56, and that upon observing the masthead lights of the Livingstonia, about four points on the port bow, coming apparently rapidly, the latter ship sounded a signal of three whistles, and thereupon the Fjell, practically without headway, ported her helm in the effort to move to starboard, to avoid the full force of the collision, but without effect.

The Livingstonia insists that finding, about 11:50, that the fog was becoming thicker, an order was given to stand by the engines, and a minute later to reduce to slow speed ahead. The vessel slowed to about four knots, and about 11:56 fog signals of a steamship were heard on her starboard bow, when her engines were stopped; that upon seeing the masthead and red lights of the vessel, which afterwards proved to be the Fjell, she swung on her starboard bow; that her engines were placed hard aport, and a short blast of the whistle given to indicate that movement, and that thereafter her engines were put full speed astern, and the appropriate three blasts of the whistle sounded; that under the influence of the reversed engines the ship was almost at a standstill, when the other vessel was observed to be swinging in such a direction as to bring the vessels together, the bow of the Livingstonia striking the port quarter of the Fjell abaft of her port beam, causing her to sink in a very short time.

[1-3] The evidence was acutely drawn on the issue regarding the navigation of the vessels at and about the time of the collision, with the result that each attempts to place the fault on the other; the navigators of each ship swearing that the other failed to take proper steps to avert the disaster, each particularly testifying that the other was proceeding at undue speed in the circumstances. The correct solution of this issue cannot be said to be free from difficulty. Some of the faults sought to be established by the vessels against each other would seem to fall within the class of error in extremis, if indeed a mistake was committed. But the crucial question as to the speed of the vessels has to be determined in the light of all the testimony and the fair and reasonable inferences to be drawn therefrom, and the court's judgment is that neither of the vessels were proceeding at the moderate rate of speed that they should have been making, having regard to the character and density of the existing fog.

The rule generally in that respect may be said to be that they should have been so navigating as to have been able to stop in time to avoid collision, upon an approaching vessel coming in sight, provided, of course, that such approaching vessel was proceeding at the moderate rate of speed required by law. The Colorado, 91 U. S. 692, 23 L. Ed. 379; The Umbria, 166 U. S. 404, 17 Sup. Ct. 610, 41 L. Ed. 1053; The Julia Luckenbach—The Indrakuala (D. C.) 219 Fed. 600, affirmed Indra Line v. Palmetto Phosphate Co., 239 Fed. 94, 152 C. C. A. 144; The Hawkhead (D. C.) 248 Fed. 780. Had both vessels on this occasion observed this salutary rule of navigation, there would have been no collision, and the court is forced to the conclusion, from a full consideration of the testimony, that both steamships were navigating in such disregard of this rule as to bring about the disaster, and as a consequence that the loss resulting should be borne by the vessels jointly.

A decree may be entered so ascertaining.