## THE ALBATROSS.

## THE ALDEN A. MILLS.

(District Court, D. Massachusetts. June 2, 1921.)

Nos. 1768, 1923.

1. **Collision ⫻82(2)—Speed in fog in frequented waters too great to stop within seeing distance is immoderate.**

    A vessel proceeding during a fog in frequented waters at such speed that she cannot stop within seeing distance of another vessel is going at an immoderate speed, and is at fault for a collision resulting therefrom.

2. **Collision ⫻82(2)—Vessel held at fault for reversing engines.**

    A vessel which had just backed out from her pier in a fog and had started her engines forward, when another vessel was seen heading directly toward her amidships on her port side, was at fault for reversing her engines, since it was her duty to maintain her course, and the duty of the other vessel to pass under her stern, and is liable for a collision when she was struck so near the stern that it was evident the other vessel would have cleared her, if she had not reversed, notwithstanding her master's claim that the collision was inevitable, and he reversed merely to receive the blow in a less vulnerable spot.

3. **Collision ⫻81—Vessel held at fault for requiring other duties of lookout in a fog.**

    A vessel just backing from her pier in a fog was at fault for requiring the lookout in her bow to take in the bow line, since a lookout should be given no other work which interferes with that duty, especially on congested waters in a fog.

In Admiralty. Separate libels by the Commonwealth Fisheries Company against the steamer Albatross, and by the Albatross Company against the steam trawler Alden A. Mills, to recover damages for injuries resulting from a collision between the two vessels. Decree rendered, finding each vessel at fault and dividing the damages.

In No. 1768:

Currier & Young, of Boston, Mass., for libelant.

Richard H. Wiswall, Hill, Barlow & Homans, and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., for claimant.

In No. 1923:

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for libelant.

MORTON, District Judge. This is a case of collision in a fog in Boston Harbor between the steam trawlers Alden A. Mills and Albatross. It took place at about 9:15 on December 23, 1919, abreast the wharf of the Boston Marine Company in East Boston. There was no wind or sea; the fog was dense.

The Albatross was proceeding down the harbor, heading diagonally across it on a long slant toward the west shore. She had at least two men on lookout on her forward deck, her master on the bridge, a man at the wheel, and the mate in the pilot house, blowing fog signals. The bow lookout reported a vessel ahead. The master was unable at that time to see the vessel; but by his orders the engines were immediately

---

⫻For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

reversed and the helm put hard aport. The effect of these maneuvers was to throw the bow of the Albatross to starboard as fast as possible. The vessel which the lookout of the Albatross saw proved to be the Alden A. Mills, which had just backed out from the wharf of the Boston Marine Company, across the path of the Albatross, and was about to turn to port and go up the harbor. When first sighted the Mills was almost squarely across the path of the Albatross, which was headed about amidships of the Mills. They were about 200 feet apart. At this time the Mills had just started her engine ahead; but it is doubtful if it had yet overcome her sternway from backing out. That she was under way, proceeding up the harbor, as her master testifies, is certainly not the fact.

The Albatross was swinging to starboard—i. e., towards the stern of the Mills—under her reversed engine and hard aport helm. In this situation the master of the Mills ordered her engine full speed astern. This moved the Mills backward and kept her in the path of the Albatross as the latter swung. Inasmuch as the Albatross struck the Mills only about 30 feet from the stern, and the Mills in all probability moved astern more than that distance after sighting the Albatross, it seems fairly clear that if the Mills had kept her engines going ahead, or even had simply stopped them, the accident would not have happened.

When leaving the wharf the Mills blew a long blast. In the interval of several minutes between that and the collision, she had, on her own testimony, given only two short blasts, neither of which was heard on the Albatross. They were not proper signals for a vessel backing, nor for one lying motionless. They were not given, according to witnesses on the Mills, until just as she started her engines ahead. For several minutes after ceasing her coming out signal, she gave no signal at all.

[1] In this circuit, at least, it must be regarded as settled that a vessel proceeding in a fog in frequented waters, at such speed that she cannot stop within seeing distance of another vessel, is going at an immoderate speed and is at fault. The Sagamore, 247 Fed. 743, 159 C. C. A. 601. The Mills was not moving either toward or away from the Albatross as the latter approached her. So that the facts fall squarely within the principle of law just stated, and the Albatross must be held at fault for immoderate speed.

[2] Making every allowance for the latitude of action permitted in an emergency, it seems to me that the conduct of the master of the Mills in backing his vessel after the Albatross was sighted was so stupid and inexcusable as to be negligence; and I so find. The Albatross had suddenly appeared broad off on his port side, headed directly at it. He knew that it was the duty of his vessel to keep her course and of the other vessel to pass under his stern; that the other vessel would naturally assume that she had come upon a vessel crossing her bow from starboard to port, and that she would be practically certain to do exactly what the Albatross did in this case. The reason given by him for his really extraordinary maneuver, viz. that he thought the other steamer sure to hit him and was moving his vessel, so that the

blow would fall in the least vulnerable spot and not injure his boats, seems to me to be an afterthought. It is, to say the least, unsatisfactory and unconvincing.

[3] The Mills was also at fault for not having a proper bow lookout. The man (Peddle) assigned to that duty was directed to take in the bow rope, and was doing so as the Mills backed out. The captain of the Mills testifies that the first report of the Albatross came from Peddle; and Peddle testifies that, "after I pulled a line in, I started to look up the harbor and I saw this boat;" that the Mills "had not gotten out far enough to start ahead" at that time. The stern lookout on the Mills did not see the Albatross "so soon as they did forward." A lookout should be given no other work which interferes with that duty, and this is especially true on congested waters in a fog. If Peddle's attention had not been directed to getting in the bow line in accordance with his orders, it is likely that he would have discovered the Albatross sooner than he did.

It is at least doubtful whether the Mills gave sufficient and proper fog signals; but it is unnecessary to decide this point.

Decree that each vessel was at fault and for divided damages