**POLARUS STEAMSHIP CO., Inc., as owner of THE T/S POLARUSOIL, Libelant-Appellee,**

v.

**THE T/S SANDEFJORD, her engines, boilers, etc., and Viriks Rederi A/S (Haldor Virik, Manager), Respondents-Appellants.**

**VIRIKS REDERI A/S (Haldor Virik, Manager) as owner of THE T/S SANDEFJORD, Cross-Libelant-Appellant,**

v.

**THE T/S POLARUSOIL, her engines, boilers, etc., and Polarus Steamship Co., Inc., Cross-Respondent-Appellee.**

Nos. 365, 366, Dockets 24002, 24003.

United States Court of Appeals
Second Circuit.

Argued May 18, 1956.

Decided Aug. 20, 1956.

Haight, Gardner, Poor & Havens, New York City (MacDonald Deming and Gordon W. Paulsen, New York City, Richard G. Ashworth, New York City, of counsel), for cross-libelant-appellant.

Dow & Symmers, New York City (Wilbur E. Dow, Jr. and William A. Wilson, New York City, of counsel), for libelant-appellee.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

At about two o'clock in the morning of July 11, 1951, two tankers, each over four hundred feet long, approaching one another in a fog from opposite directions,

collided some forty odd miles at sea in the travelled highway off Barnegat Inlet on the New Jersey coast. The district judge found that one of the vessels, the Sandefjord, was solely to blame, and she appeals.

The Polarusoil, which had no radar, was bound for Texas on a southerly course and the Sandefjord was heading north from Philadelphia to New York. Except for the fog, which "was a changing, fluid thing," nothing interfered with navigation, as there was no sea or wind and the current was negligible.

The Sandefjord was equipped with navigational radar in good order and had a full speed under the prevailing conditions of about fourteen knots through the water. As the fog closed in, she reduced her speed only two knots. Despite hearing five or six fog signals from the Polarusoil, and observing in the radar a vessel some miles ahead off her port bow, she maintained this excessive speed of twelve knots until she sighted the Polarusoil close aboard, when the Sandefjord ordered her engines in reverse. Her fault is clear and was conceded at the trial. She contends, however, that the Polarusoil was also to blame.

The Polarusoil's full speed was about twelve knots, but because of the fog she was proceeding at half speed, or about six knots through the water. The first warning to those aboard the Polarusoil that another vessel was close by was the fog whistle of the Sandefjord two minutes or thereabouts before she was hit. She stopped her engines immediately and, on hearing the second blast, she put her engines full astern. Then for the first time, the oncoming Sandefjord was visible to the Polarusoil. At the time of impact the Polarusoil "was dead in the water or going astern slowly."

There were a number of other factors, such as the standby order to the engine room of the Polarusoil and her trim, as well as the failure of those in command of the Sandefjord to make proper use of her radar. Indeed, what happened here demonstrates how radar may, when not properly used, increase the chances of collision. Had successive observations been plotted to determine the course and speed of the Polarusoil, which was plainly visible on the radar screen when about seven miles away, the ships would probably have passed one another in safety. But the master of the Sandefjord made no such calculations; he merely guessed that the Polarusoil was steering a course parallel to the coastline and moving to the left of the Sandefjord. While a matter of conjecture, it seems not unlikely that the Sandefjord would have proceeded more cautiously had she not been equipped with radar, which, under the circumstances, gave a false sense of security.

■ We cannot disturb the finding that the Sandefjord was solely to blame. There was no violation by the Polarusoil of Article 16 of the International Rules, 33 U.S.C.A. § 92, requiring vessels to proceed in foggy weather "at a moderate speed, having careful regard to the existing circumstances and conditions."

■ "Moderate" speed is undoubtedly less than full speed. The Pennland, D.C.S.D.N.Y., 23 F. 551; The State of Alabama, D.C.S.D.N.Y., 17 F. 847. But the term is a relative one, and precisely how much less the statute requires depends on the peculiar circumstances of each case. The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148; The Bayonne, 2 Cir., 213 F. 216; Quinette v. Bisso, 5 Cir., 136 F. 825, 5 L.R.A.,N.S., 303, certiorari denied 199 U.S. 606, 26 S.Ct. 746, 50 L.Ed. 330; The State of Alabama, supra; see also, Shope, Collision at Sea 341 n. 34 (1903).

True it is that there are statements that in congested harbor waters, and at times elsewhere, anything more than bare steerageway in the presence of fog may be too much. The Martello, 153 U.S. 64, 14 S.Ct. 723, 38 L.Ed. 637; The Umbria, 166 U.S. 404, 412, 17 S.Ct. 610, 41 L.Ed. 1053. Even more frequently, the applicable rule has been said to be that no vessel should be operated in a fog at a speed which is so fast that she cannot stop within the distance her helmsman can see ahead. The Chattahoochee, 173 U.S. 540, 548, 19 S.Ct. 491,

43 L.Ed. 801; The Colorado, 91 U.S. 692, 23 L.Ed. 379, quoting with approval, The Batavia, 40 Eng.L. & Eq. 25; The Haven, 2 Cir., 277 F. 957; The City of Norfolk, 4 Cir., 266 F. 641, certiorari denied sub nom. Chesapeake S. S. Co. of Baltimore City v. Hand, 253 U.S. 491, 40 S.Ct. 584, 64 L.Ed. 1028; The Northern Queen, D.C.S.D.N.Y., 117 F. 906; The Albatross, D.C.D.Mass., 273 F. 285; The Fjell, D.C.E.D.Va., 257 F. 478; see also, Marsden, Collisions at Sea 340 (9th ed., Gibb, 1934).

But these are not rules of thumb to be applied willy-nilly. They are but glosses upon the basic rule requiring operation at a moderate speed, and, like it, they must be applied according to the particular circumstances of each case. While there was some evidence that the range of visibility here was about a ship's length, some 400-odd feet, or, according to another witness, two ships' lengths, the trial judge very properly held that the distance could not be fixed with any accuracy. The purpose of the statute, spelled out in the "sight rule," is to require generally and not absolutely that a vessel proceed only at such speed that it can stop before striking another vessel which comes into the range of its vision. And here the Polarusoil was "stopped in the water and probably going astern very slowly at the time of the collision." Cf. The Pemaquid, D.C. 255 F. 709, reversed on the facts, 1 Cir., 288 F. 666.

There is another feature of this case which is worthy of comment, in view of the congestion of the admiralty docket in the Southern District of New York. At the close of the evidence Judge Walsh dictated his decision and his findings, with some discussion of the evidence. This is good practice, especially in collision cases, where much depends upon a mental picture of the vessels as they approached one another and the conditions of time, fog, wind, current, and so on, in which the signals are given and the various maneuvers take place. Where the authorities cited in the trial briefs are studied during the trial and the evidence followed with some concentration, the trial judge is more likely than not to reach a just and sound result when the case is fresh in his mind and his impressions of the various witnesses are still vivid. Of course, complicated and difficult cases require further study; but in the average run-of-the-mill case, such as the one now before us, delay and the service of further briefs serve little purpose other than to multiply the amount of time and effort expended upon the case.

Affirmed.